(163 App. Div. 803)

PEOPLE ex rel. TOWN OF HEMPSTEAD et al. v. STATE BOARD OF TAX COM'RS et al. (TOWN OF OYSTER BAY et al., Interveners). (No. 212–132.)

(Supreme Court, Appellate Division, Third Department. September 9, 1914.)

1. TAXATION (§ 450*)—EQUALIZATION—REVIEW—SUFFICIENCY OF EVIDENCE.
    On certiorari to review the determination of the state board of tax commissioners in dismissing an appeal by one of the three towns in a county from an equalization of assessments by the board of supervisors, evidence *held* not to sustain the board's finding that the percentages of assessed to actual values in the three towns were equal, but, on the contrary, to show that property in the complaining town was assessed approximately 50 per cent. of its value, while that of the other two towns was assessed at approximately 25 per cent. of its value.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 800–804; Dec. Dig. § 450.*]

2. TAXATION (§ 348*)—ASSESSMENT—VALUATION OF PROPERTY.
    Farm land in a former agricultural community near a large city, which is in a state of transition to suburban conditions, and much of which is immediately salable for other than farm purposes, and is held by its owners at much higher figures than its value for farm purposes, should not be assessed for taxation at its value for farm purposes, and while possible, remote, or purely speculative values cannot be considered, some consideration may be taken of its present availability for other uses.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 584–589; Dec. Dig. § 348.*]

Original writ of certiorari by the People, on the relation of the Town of Hempstead and another, against the State Board of Tax Commissioners and others, to review the determination of such board in dismissing the appeal of the relator, the Town of Hempstead, from the equalization of assessments made by the Board of Supervisors of the County of Nassau for the year 1911. Determination of the board annulled.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Alfred T. Davison, of Brooklyn, and Thomas Carmody, Atty. Gen., for relator.

Uterhart & Graham, of New York City, for respondent Town of Oyster Bay.

Dowsey & Parsons, of New York City, for respondent Town of North Hempstead.

SMITH, P. J. Nassau county comprises the three towns of Hempstead, North Hempstead, and Oyster Bay, there being one supervisor from each town, and relator's claim herein is that no proper equalization of assessments was made in this county in the year 1911, with the result that its property has been taxed at a much higher percentage of its actual value than was the property in the other two towns, thus prejudicing it to the amount of about $175,000. This claim has been rejected both by a majority of the board of supervisors of the county and by the state board of tax commissioners. The entire proceedings are now presented in review for our determination, which requires a careful examination of the voluminous record submitted.

[1] It appears that before any equalization was made by the supervisors the attorney for the appellant town sought to present to them experts as to land values in the county, but the supervisors would not allow this, and finally by a majority vote equalized the real estate values of the several towns at the assessed valuations; the supervisor for the town of Hempstead being outvoted two to one. The supervisors were thus notified in due season of the claim of this appellant, but so far as the record discloses do not appear to have made any serious attempt to ascertain whether or not this claim was justified. The only investigation shown to have been made by them was of the most superficial and perfunctory kind. That the situation fairly required something more than a mere formal approval of the assessors' valuations as a basis for equalizations is shown by a brief summary of the town equalizations by this very board of supervisors for the preceding three years. In the year 1908 the real estate assessments were, in round numbers, $18,000,000, $9,000,000, and $11,000,000 for the towns of Hempstead, North Hempstead, and Oyster Bay, respectively. For 1909 the assessments were $21,000,000, $10,000,000, and $12,000,000. During these two years the equalizations were made by the board of supervisors at these same figures without any changes whatever. About this time it appears that the Attorney General complained to the district attorney of Nassau county regarding the matter of assessments, who thereupon presented the matter to the grand jury, which in June, 1910, made an investigation and presentment criticising the then assessments in the county as inequitable. Apparently as the result of this agitation the assessments in 1910 for the town of Hempstead were raised almost threefold, but no corresponding increase was made in the assessed valuations of the other two towns. In that year the figures stand at $58,000,000. $11,000,000, and $13,000,000. But the board of supervisors recognized that these values did not represent the true relative real estate

values of the three towns, for they then equalized them at $45,000,000, $18,000,000, and $21,000,000, respectively. It is thus apparent that for the years 1908, 1909, and 1910 the board of supervisors estimated that the real estate values of the town of Hempstead were about equal to the combined real estate values of the other two towns. The equalized figures for the three years as given would seem to show, however, that the real estate of the town of Hempstead was increasing in value slightly faster than that of the other two towns, as the equalized real estate valuation of the town of Hempstead for 1910 was about 53 per cent. of the total equalized value of the real estate in the county, as against a corresponding 46 per cent. for the year 1908. Coming now to the year in question, 1911, we find the assessments corresponding closely to those of the preceding year, being respectively $59,000,000, $12,000,000, and $14,000,000. But this year the board of supervisors practically reversed their decisions for the preceding three years by refusing to change these assessed valuations, and by adopting these figures without change for the purposes of equalization. This would mean that the value of the real estate in the town of Hempstead was over 69 per cent. of the total real estate values of the entire county, although the town of Hempstead has an area of only 52,480 acres out of a total county area of 157,440. No explanation is suggested as to this apparent remarkable increase in value in one year by one town as compared with the two adjoining towns, and we are forced to the conclusion that either the 1911 equalization is erroneous or else that the three preceding ones were. Another fact to be noted is that this same board of supervisors, in the case of three school districts lying partly in Hempstead and partly in North Hempstead, in this same year, 1911, recognized the inequality of assessments in the two towns, and therefore increased the assessed valuations in the town of North Hempstead, or decreased the assessed valuations in the town of Hempstead, so as to equalize for school purposes the assessments in the same school district in the two towns, the ratio used being about two to one.

Upon the appeal taken to the state board of tax commissioners the appellant offered numerous experts as to land values, and thus put in evidence the actual as compared with the assessed values of over a thousand different parcels of real estate lying in various parts of Nassau county. The various localities were, at least for the most part, agreed upon with counsel for respondents, and seem to have been fairly representative. All the properties along certain roads or streets or in certain improved sections were then valued, thus obviating any objections that the properties testified about were specially selected on account of abnormally high or low assessments. Appellant claims that the evidence thus obtained at the hearings before the state board of tax commissioners shows that the ratios of assessed to actual real estate values for 1911 were 47.15 per cent., 15.15 per cent., and 13.62 per cent., respectively, for the towns of Hempstead, North Hempstead, and Oyster Bay; in other words, that the appellant town was assessed for purposes of taxation over 300 per cent. higher than either of respondent towns. He further claims that equalization

should be made on a basis of the percentages given, which would result,· with an average rate of assessment of 27.63 per cent. for the entire county, in the following equalized real estate values for the three towns, respectively: $35,000,000, $22,000,000, and $28,000,000. This would make the total real estate values of the town of Hempstead equal to about 40 per·cent. of the total real estate of the county.

[2] Whether the total real estate values of the town of Hempstead were thus in 1911 40 per cent., 46 per cent., 53 per cent., or 69 per cent. of the total real estate values of the three towns is a matter difficult to exactly ascertain, and one upon which competent experts might well differ. This is due in large measure to the fact that considerable areas in each of these three towns then were and still are in a state of transition from rural to suburban conditions. Nassau county crosses Long Island from north to south and is bounded along its entire western border by New York City. Many persons of wealth have bought up large tracts of land in this county at high figures for estates and residential purposes, while many more tracts have been acquired for development purposes to be cut up into building lots. There thus exist side by side in many places in the county improved properties worth, including buildings, thousands of dollars per acre, and other properties used only for farm purposes, and as such worth but a few dollars per acre. The question then arises as to whether such latter parcels should be assessed at mere farm values, or whether allowance should be made for the fact that in many cases such property is being held by the owners at much higher figures, and is in fact immediately salable for development or estate purposes. Moreover, on account of the comparative nearness of New York City, even in the case of the property not immediately salable for such purposes, probably few owners would be willing now to sell for ordinary farm values. Under such conditions as outlined it would seem that the test of strictly farm values is too narrow a measure of the actual worth of many properties, even if for the present they are only used for farm purposes. Of course, possible and remote and purely speculative values cannot be considered in ascertaining actual values of real estate, but we think that under these special conditions, when a former purely agricultural community is fairly in a state of transition to suburban conditions, some consideration at least may be taken of the present availability for other than farm uses in arriving at true· land values. The methods used by appellant's witnesses thus do not seem open to criticism upon the whole, although of course their final opinions of value based upon such methods of ascertainment may be a matter of controversy in any particular instance.

The town of Oyster Bay did not introduce any evidence whatever of land values in that town, and the town of North Hempstead put in evidence only a comparatively few parcels of land in such town. The chief witness for the respondent the town of North Hempstead was one Jacobus, a real estate man of considerable experience, although most of his dealings had been at some distance from the properties he valued. His valuations were in most cases far less than

those testified to by appellant's witnesses, the reason for the difference being largely that he refused to give in many cases other than approximately farm valuations to properties that were given development or suburban valuations by other experts. His valuations seem in some instances at least to have been excessively conservative, as they were sometimes far below actual sales made. He showed a supreme indifference to prices obtained on actual sales of property valued by him, and testified on cross-examination that as to certain property he did not give any consideration to sales at all. He also testified that the fact that reputable institutions had loaned money on properties appraised by him to a greater amount than his appraisals would not make any difference in his valuations. He further admitted that in another proceeding he had appraised certain property at an undervaluation. This witness was examined and cross-examined at length, and seems to have greatly impressed the presiding commissioner, for he publicly declared, when the proceedings were more than half over and most of appellant's witnesses had been examined, "I will state that this is the only really honest expert that has appeared before us." We are unable to find in the record any grounds for such a statement.

The state board in arriving at its decision refers to certain personal observations of parcels appraised made by the chairman and Commissioner Sullivan and also to certain tax proceedings heretofore had in Nassau county, which, however, do not appear in the record and were not put in evidence, nor referred to, in the course of the hearings. They also refer specifically to a certain referee's report, which seems never to have been in existence. Making due allowance for all such considerations, so far as is possible with matters unknown to us, and so not capable of accurate estimation, we nevertheless are unable to conclude, after an examination of the record, that the decision of the state board is supported by the evidence, or that the percentages of assessed to actual values in these towns were equal for the year in question. We think, on the contrary, that an average higher percentage in Hempstead than in the other two towns was fairly shown. Just what was the ratio between the different percentages mentioned is a matter of great doubt, but it probably was not as much as three to one, as claimed by the appellant. But this same board of supervisors in their equalization of 1910 in effect held that the ratio was approximately two to one, and they have recently held the same with regard to this 1911 assessment in the matter of the equalizations in three school districts. We accordingly conclude that a ratio of two to one may be considered a fair approximation; in other words, that upon the record the 1911 assessments of the town of Hempstead should be equalized at this ratio as regards both North Hempstead and Oyster Bay. The state board of tax commissioners has apparently already held that real property in the town of Hempstead was assessed in 1911 at from 45 to 50 per cent. of its value. So in this proceeding we think the percentages of assessed to actual values for purposes of equalization may fairly be held to be

50 per cent. for the town of Hempstead and 25 per cent. for each of the other two towns.

The determination of the state board of tax commissioners should therefore be modified in accordance with the foregoing, together with costs to the relator. This court finds as a fact that the percentages which the assessed value of the real property in each town in 1911 bore to its full value are 50 per cent. for the town of Hempstead and 25 per cent. for each of the other two towns in said county.

Determination of the state board of tax commissioners modified in accordance with opinion, with $50 costs and disbursements to the relator. All concur.