72 N.J. Super. 238 (1962)
178 A.2d 229
DIVISION OF TAX APPEALS, CONRAD KUNDL AND LENA KUNDL, PETITIONERS-RESPONDENTS,
v.
TOWNSHIP OF EWING, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1961.
Decided February 9, 1962.
*239 Before Judges GAULKIN, KILKENNY and HERBERT.
Mr. A. Jerome Moore argued the cause for appellant.
Mr. Edward J. Leadem argued the cause for respondents.
The opinion of the court was delivered by HERBERT, J.S.C. (temporarily assigned).
On October 1, 1959 Conrad and Lena Kundl owned 95 1/2 acres of land in Ewing Township. The assessed value placed upon that land for the tax year 1960 by the local assessor was $35,810, a figure which reflected the township's use of an assessing ratio of 25% of true value. When Mr. and Mrs. Kundl *240 appealed to the Mercer County Board of Taxation they got no reduction, but upon taking their case to the State Division of Tax Appeals they obtained a judgment reducing the assessment to $14,325.
The township has now brought to us for review the judgment of the State Division, and contends that the original assessment was proper and should not have been reduced. As the record contains numerous references to the value of each acre of the land, it may be noted that the original assessment was based upon $1,500 an acre and the reduced figure set by the State Division upon $600 an acre, both of these unit values having been translated into the respective assessments by using the township's established 25% ratio.
The land in question is a farm on which the Kundls live and which Mr. Kundl has worked for about 15 years. It is located on the Ewingville Road in an area where use of property for residential subdivisions is increasing rather rapidly. The case turns upon the standards of value to be applied. Should the farm be valued at what another farmer might pay for it if he intended to use it and keep it as a farm, or should its valuation for tax purposes reflect prospects of sale for residential plots? The proper answer to this question is not influenced by the provision which was added to our tax statutes in 1960 (N.J.S.A. 54:4-1, as amended by L. 1960, c. 51, p. 444) and which reads in part:
"In the assessment of acreage which is actively devoted to agricultural use, such value [the assessable taxable value prescribed by law] shall not be deemed to include prospective value for subdivisions or non-agricultural use."
We are considering here an assessment made as of October 1, 1959, and are not concerned with the effect of the subsequently-enacted statute or with a recent ruling that it is unconstitutional. See Switz v. Kingsley, 69 N.J. Super. 27 (Law Div. 1961).
However, the sentence we have quoted from the Laws of 1960 states the rule which Mr. and Mrs. Kundl seek to *241 have used in the valuation of their farm for tax purposes. Their expert witness, Mr. Bachman, valued the farm at $400 an acre. At the ration of 25% of true value, which was being used by the township in assessing as of October 1, 1959 for the year 1960, Mr. Bachman's appraisal would have produced a total assessment of $9,550 on the 95 1/2 acres of land. He relied, when testifying on direct examination, upon six sales of farm properties which brought prices ranging from $183 to $572 an acre. None of the properties sold was in Ewing Township, although all were in Mercer County. Mr. Bachman went on to testify that in the preceding four years there had been 151 sales "in this area," that he had examined each and every one of those sales and had ruled out the great majority of them as not being comparable because they "were not for agricultural purposes."
On cross-examination Mr. Bachman conceded that the "Kundl farm has a potential use for residential development in the future." He said that in 1957, as a broker, he sold 62 acres of farm land for residential development at a price of $800 an acre, which land was within a half-mile of the Kundl farm; and that three sales were made in 1958 of land in the same vicinity at prices ranging from $1,529 an acre to $3,065, these sales being also for other than farm use. He also testified that a portion of the Kundl farm had been bought from Mr. and Mrs. Kundl as the site of a church or parochial school at $3,000 an acre, and another portion had been bought by the school board of Ewing Township at $3,500 an acre. The church or parochial school sale took place shortly after the 1959 assessment date.
The expert witness for the township, Mr. McCampbell, valued the Kundl land at $143,250, or $1,500 an acre. It was his opinion that the highest and best use of the property would be for residential development, and he pointed to recent sales of lands in the immediate vicinity for such purposes at prices in excess of $1,500 an acre.
Mr. Kundl took the stand in support of his own case, but only to say that his property is actually used as a *242 farm and had been so used by him for 15 years, and to testify to his intention to go on farming the property until the end of his life. He also said that the prices of the plots sold by him and his wife to the Diocese of Trenton and to the township school board were in each case the amounts offered by the purchaser.
We conclude that the Division of Tax Appeals applied erroneous principles when it reduced the land assessment from $35,810 to $14,325. The approach to the problem used by the Division is shown by the following quotations from the opinion which the Commissioner delivered orally at the close of the hearing:
"He [Mr. Kundl] produced an expert, a Mr. Bachman, who took the sales in the area which were farm sales and came up with a value of $400 per acre. It was admitted by Mr. Bachman that there were other sales at much higher figures, at probably figures which might justify this assessment, but Mr. Bachman stated that these figures were figures which comprehended a use as a subdivision, and suburban or urban use, not an agricultural use.

* * * * * * * *
In viewing this case, we come back to, as we do often in tax law, to many conflicting principles: One principle was presented that all lands shall be assessed equal; another principle is that land shall be assessed in the use to which it is put by the taxpayer on the assessing day. I hold, and I feel very strongly, that this latter rule must be paid attention to, and that it must govern our disposition of cases such as this. The farmer does not ask that the community be urbanized. Of course, he quite frequently profits from it, as the taxpayer has in this case. In view of the advancing costs in the community, I am inclined to go somewhat higher, despite my feeling in principle with the taxpayer, than the taxpayer's expert has gone. I will accordingly hold that the land is valued for the purpose of assessment at $600 an acre, which will make the true value of land at $57,300, and at the rate that the community is assessing, the assessment will be reduced to $14,325."
Title 54, chapter 4, section 23 of the Revised Statutes, as amended by L. 1943, c. 120, p. 353, § 3, was in effect on October 1, 1959, the assessing date. Though later changed somewhat by L. 1960, c. 51, § 25, p. 445, the section, before that change, read:
*243 "The assessor shall ascertain the names of the owners of all real property situate in his taxing district, and after examination and inquiry, determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October first next preceding the date on which the assessor shall complete his assessments, as hereinafter required."
A portion of R.S. 54:4-1, as amended by L. 1947, c. 413, § 14, p. 1287, which was in effect on October 1, 1959, is also pertinent:
"All property real and personal within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter at its true value, and shall be valued by the assessors of the respective taxing districts."
"True value" has been held to mean market value as of the assessment date. Kearny v. Division of Tax Appeals, 137 N.J.L. 634 (Sup. Ct. 1948), affirmed 1 N.J. 409 (1949). The Supreme Court has also said, "True value of property of any kind is in the essence, the value which it has in exchange for money." Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 163 (1949).
The scope of an assessor's judgment as to the price which a property would bring at a fair and bona fide sale by private contract on the assessment date is not limited to the sale of a farm as a farm or a residence as a residence. Rather, the assessor must consider the possibility of sale to a buyer who intends a different use, unless such possibility is so remote as to have no real bearing upon current value. This view is not in conflict with a principle stated in Colwell v. Abbott, 42 N.J.L. 111, 115 (Sup. Ct. 1879), and more recently in Stevens Institute v. State Board of Taxes and Assessments, 105 N.J.L. 99, 101 (Sup. Ct. 1928), affirmed 105 N.J.L. 655 (E. & A. 1929), and Newark v. West Milford Township, 9 N.J. 295, 303 (1952), that property to be assessed must be valued in the actual condition in which the owner holds it. In Colwell v. Abbott, supra, the court said:
*244 "The property to be assessed, whatever may be its character, whether a cultivated farm or a tract of wild land, is to be taken and valued in the actual condition in which the owner holds it.
If divided into lots, each lot is of course assessable at its full value in the market.
But if held by the owner as a farm or as an entire tract, the question is not what would this or that part of it sell for, if separated from the rest, but what would the property as it is  as the owner actually holds it  sell for, at a fair private sale?"
An assessor who values a farm as though actually subdivided into the building lots of a residential development, when in fact that has not yet occurred, would be in error; but he would also err if he refuses to consider that a developer would pay a higher price for the farm than another farmer. See Newark v. West Milford Township, supra, 9 N.J., at p. 306.
A discussion of the problem of assessing farm land in a changing community is found in People ex rel. Town of Hempstead v. State Board of Tax Commissioners, 163 App. Div. 803, 149 N.Y.S. 239 (App. Div. 1914), modified as to remedy 214 N.Y. 594, 108 N.E. 913 (Ct. App. 1915). There the court said (163 App. Div., at p. 807, 149 N.Y.S., at page 239), when dealing with the problem of equalizing assessments in the municipalities of Nassau County:
"There thus exist side by side in many places in the county improved properties worth, including buildings, thousands of dollars per acre, and other properties used only for farm purposes, and as such worth but a few dollars per acre. The question then arises as to whether such latter parcels should be assessed at mere farm values, or whether allowance should be made for the fact that in many cases such property is being held by the owners at much higher figures, and is in fact immediately salable for development or estate purposes. Moreover, on account of the comparative nearness of New York City, even in the case of the property not immediately salable for such purposes, probably few owners would be willing now to sell for ordinary farm values. Under such conditions as outlined it would seem that the test of strictly farm values is too narrow a measure of the actual worth of many properties, even if for the present they are only used for farm purposes. Of course, possible and remote and purely speculative values cannot be considered in ascertaining actual values of real estate, but we think that under these special conditions, when a former purely *245 agricultural community is fairly in a state of transition to suburban conditions, some consideration at least may be taken of the present availability for other than farm uses in arriving at true land values."
See also annotation, 24 A.L.R. 649, "Prospective value as basis of valuation of land for purposes of property taxation." Cf. Charles Warner Co. v. State Board of Taxes and Assessments, 1 N.J. Misc. 26, 55 N.J.L.J. 251 (Sup. Ct. 1923).
In our opinion the correct principles applicable to assessments in New Jersey on October 1, 1959  we express no opinion on the effect of L. 1960, c. 51, p. 444 (supra)  require something stronger than the conclusion stated in the last sentence of the quoted statement of the New York court. The assessor, the county board and the State Division were all required on the facts of this case to give consideration, in arriving at the "full and fair value" of the Kundl farm, to the likelihood of selling it for other than farm uses and to the price it would sell for on such a sale. Because the State Division did not give sufficient weight to the evidence of sales of nearby land for residential or other urban development its judgment must be reversed.
Although our discussion has been addressed to the problem of fixing "true value" or "full and fair value," the township's use of 25% of true value as a standard assessment ratio does not alter the basic problem. See Ridgefield Park v. Bergen County Bd. of Taxation, 31 N.J. 420, 425 (1960), where the court held that a percentage of true value may be used, thereby leaving assessors and reviewing bodies with the obligation of determining true value by proper standards even though a percentage assessment may subsequently follow.
As to further proceedings, a comment made in Newark v. West Milford Township, supra, 9 N.J., at p. 301, is somewhat appropriate:
"While it is within the power of this court under Article VI, section V, paragraph 3 of the Constitution of 1947 and Rule 3:81-13 *246 [now R.R. 4:88-13] to exercise original jurisdiction and fix the assessment in question for the taxable years, this is a power which should not be exercised in the absence of imperative necessity which does not exist here. And for the further reason that an examination of the appendices and original transcript in this case clearly and definitely renders this impossible in view of the confused and contradictory state of the record, and the failure to apply what we deem to be controlling principles of taxation under the statute in question."
Although the record before us supports the view that the market valuation of the Kundl farm cannot be determined as of October 1, 1959 without carefully considering the availability of the land for a residential development or other urban use, there is in it, at best, incomplete information about factors which may be important. For example, it was stipulated that sewer and water utilities are available to the Kundl property, but no details were given as to how close they are. The record is completely silent about the topography of the farm. Is it all level and well drained, making streets and underground utilities easy to design and construct, or are there hills, rocky places, swampy areas or the like, which would make the property less valuable to a developer and perhaps not fully comparable with some of the other properties involved in the testimony offered concerning purchases for development purposes made in the area? These and similar questions may need to be explored in light of this opinion.
The judgment of the State Division of Tax Appeals is reversed and the cause remanded to be proceeded with in accordance with this opinion and the practice and procedure of that Division. There will be no costs allowed.