BOROUGH OF ALPINE, PLAINTIFF, v. ALPINE HILLS, INC. AND CRESSKILL HILLS, INC., DEFENDANTS.

Tax Court of New Jersey

June 25, 1980.

*Schneider, Schneider & Balt,* for plaintiff (*C. Conrad Schneider,* appearing).

*Allan H. Klinger,* appearing for defendant.

HOPKINS, J. T. C.

This is an appeal from judgments of the Bergen County Board of Taxation as to the assessment values of property located in the Borough of Alpine.

The parties have agreed that the assessed value of the structural improvements on Block 11, Lot 2, should be $1,034,200. The only assessments in dispute are those attributable to the land, which was improved as a golf course and which, the parties agree, should be assessed at 81.97 percent of true value.

The following schedule shows the original land assessments, County Board judgment and claimed true values of the parties for the taxable year 1978:

|                 | Assessment   | County Board Judgment | Plaintiff    | Defendant (Taxpayer) |
|-----------------|--------------|-----------------------|--------------|----------------------|
| Block 11, Lot 2 | $1,691,600   | $ 970,000             | $2,317,700   |                      |
| Block 11, Lot 4 | 35,200       | 32,000                | 76,400       | $1,306,400           |
| Block 20, Lot 2 | 585,100      | 512,000               | 1,220,100    |                      |
| TOTAL           | $2,311,900   | $1,514,000            | $3,614,200   | $1,306,400           |

The subject property, composed of three lots, constitutes a 147.522 acre parcel situated 200 feet west of the westerly line of Route 9W in the Borough of Alpine. The site is irregular in shape, having approximately 2,519 feet on its westerly line and 2,191 feet on its northerly line. The southerly line is the dividing line between the boroughs of Alpine and Tenafly, and the westerly line is the dividing line between the boroughs of Alpine and Cresskill. Ingress and egress from Route 9W is provided over a 150 foot wide easement granted by the Borough of Alpine. The site also contains a 51 × 2,260 foot roadway easement which provides access to Tamcrest Golf Club, which is immediately west of the subject site. The property is zoned as R-R Residential, requiring a minimum lot size of 2 acres or a golf course on a minimum 100 acre plot.

The property is improved with an 18 hole golf and country club leased by Montammy Golf Club and also contains two holes which are utilized by the adjacent Tamcrest Golf Club. There is also a practice putting green and driving range. In addition to the golf course, the property contains a club house, pool with guest house, tennis courts, cart shop, pro shop, and maintenance buildings. A blacktopped golf cart lane runs throughout the 18 hole course.

The property is separated from State Highway 9W by a 200 feet wide buffer zone owned by the Borough of Alpine. The policy of the borough of Alpine during the period involved was to restrict construction on the 200 foot wide strip of land immediately adjacent to the west side of State Highway 9W, and this policy was implemented by ordinance in 1979.

Both parties introduced the testimony of expert appraisers in valuing the subject property. As the property was under a long term lease from the owners to Montammy Golf Club, the income approach was not utilized by either expert. Plaintiff's appraisal expert testified that, exclusive of structural improvements, the property, improved as a golf course, had a value of $3,614,200. In reaching this conclusion, he utilized both a market approach to arrive at a value for raw land and a reproductive cost approach to reach a true value as a golf course.

Plaintiff's expert utilized eight sales of unimproved land and one golf course in reaching his conclusion as to value. The first two properties involved the sale by a principal stockholder to his own corporation and a sale by one corporation to another corporation, with both corporations having the same principals, and the consideration being fully satisfied by a mortgage. In view of those facts, they will not be given any weight. Of the six remaining sales of unimproved property, two involved acreage which only permitted construction of one residence. While they may be utilized to determine a general understanding of individual lot values, they are not the type transactions which can be given any great weight in determining a value to the subject property. Of the remaining four sales, three were unimproved properties ranging in size from 17.3 acres to 32.14 acres, in value from $12,430 to $21,356 per acre, and in time from March 1971 to August 1977. The remaining sale involved a golf course. The details of these sales are as follows:

31.25 acres on Church street in Alpine in an R-1 zone which required 40,000 square foot lots or approximately slightly less than one acre per lot, and which sold at a price of $21,356 per acre on March 2, 1971. This particular piece of property had been subdivided. Plaintiff's expert, on the basis of an adjustment in time due to increased property values, determined that, for comparability purposes, the sale would have been at $29,898 an acre as of the critical date.

32.14 acres located on Route 9W, Alpine, which sold on July 5, 1972 at $12,430 per acre. Located in RAA zone, it permitted one

and one-half acre building lots. Based on adjustments, plaintiff's expert valued said property, for purposes of comparability, at $18,023 an acre.

18.39 acres located on Route 9W, Alpine, which sold on October 1, 1973, at $12,561 per acre. The property is located in an RR zone permitting construction on two acre sites. The property was not subdivided but could permit three building lots. The property did not have gas or water available. It had frontage of 1,034 feet on Route 9W.

17.3 acres located on Autumn Terrace, Alpine, which sold on March 9, 1977, at $22,804 per acre. This was property located within a subdivision. However, the record fails to disclose whether or not the subdivision plans covering this particular property had been filed. Plaintiff's expert reduced the price per acre, for comparability purposes, because of the size of the subject property and determined the adjusted price to be $19,383 per acre.

In addition to the aforesaid comparable sales of unimproved property, plaintiff's expert testified with respect to the sale of an improved golf course in Paramus. That particular golf course involved 115.84 acres and was sold to the Borough of Paramus at a price of $48,500 per acre, including land and buildings. Plaintiff's expert attributed $900,000 of the purchase price to the buildings and arrived at a value of $30,731 per acre as applicable to the land, including golf course site improvements.

Utilizing the aforesaid land sales, with adjustments for time, location, and desirability and topography, he arrived at a value of $19,500 per acre for the raw land as of the assessment date. To this he added $5,000 an acre for the golf course improvements consisting of greens, tee-offs, fairways, grading, etc., to arrive at a value of $24,500 per acre.

Defendant's expert also utilized the reproduction cost and market data approach in concluding that the subject property, improved as a golf course, had a value of $7,500 per acre as unimproved land with an additional $10,000 per hole to be

attributed to the improvements as a golf course. This resulted in a total land value of $1,306,400.

In reaching his opinion of value, defendant's expert utilized five sales, all of which occurred within the time period beginning October 1, 1968, and ending on July 12, 1972. Two of these sales involved properties of 3.172 acres and 2.950 acres which occurred in December of 1971 and July of 1972, respectively. Because of their relative size to the subject property, any weight to be given to them would have to be discounted.

Of the remaining three comparable sales utilized by defendant's expert, two were unimproved properties as follows:

32.14 acres located on Route 9W in Alpine, with a frontage of 250 feet on the highway. It was zoned as an RAA zone, or residential, requiring one and one-half acre lots. It was sold on July 5, 1972 at $12,430 an acre. Defendant's expert reduced the value for comparability purposes by 10 percent because the subject property lacked frontage on Route 9W, by 20 percent because its area was 32 acres as compared with the 147 acres here involved, and by an additional 5 percent because the zoning permitted a greater density on the property, i. e., one and one-half acre lots as compared with the two acre lots required in the subject property. No adjustment was made for time. The adjusted comparability price was $8,080 per acre.

126.844 acres located on Route 9W in the Borough of Alpine. It had over 700 feet of frontage on Route 9W. It was zoned RR, which required a two acre subdivision. The property was sold on July 20, 1970 at $8,279 an acre. Defendant's expert reduced said comparable by 10 percent to adjust for the fact that the subject property did not have frontage along Route 9W. No adjustment was made for time. The adjusted comparability price was $7,451 per acre.

Defendant's expert further detailed the sale of a golf course on October 1, 1968 at a price of $11,499 an acre. He computed this price by reducing the total sales price by an estimated value of the improvements and attributing the residual balance to the land. He reduced the computed value of $11,499 an acre by 30

percent for comparability purposes in order to attribute to the subject property the lack of frontage on Route 9W and the fact that the subject property was zoned for two acre lots as compared with the comparable property permitting one acre lots. No adjustment was made for time. His adjusted sale price was $8,049 per acre.

Defendant's expert considered the property to be adversely affected by its topography. He testified that it was located in a very rocky area of the Palisades and required a great deal of maintenance because the fill supporting the sod is only 3 to 4 inches deep. He believed that this would result in problems in retaining soil and, also, the absorption quality would be limited.

Defendant's expert admitted that the cost of golf course improvements to raw land would be $30,000 per hole. However, he only attributed a value of $10,000 per hole, as he believed that such improvements would have an above normal rate of depreciation and present extraordinary maintenance and replacement problems.

Both parties, either explicitly or implicitly acted on the premise that the highest and best use of the subject property was as a golf course. Both experts valued the property by utilizing comparable sales of raw land, together with a sale of a golf course, to arrive at a value of the subject land as raw land. Treating this value as a cost of land and adding thereto a cost attributable to golf course improvements, they reached their respective conclusions.

The court accepts the aforesaid approach as the most reliable method of valuing the subject property. In so doing, there is no problem in utilizing comparable sales of raw land which were intended to be used for residential purposes. Anyone intending to build a golf course would have to go into the open market and compete with such land buyers, absent zoning restrictions. There are no such zoning problems here, as the subject property was also zoned for residential purposes.

Plaintiff's expert witness, in concluding a raw land value of $19,500 per acre, utilized two sales of raw land which, with

adjustments, he deemed to have values of $20,725 and $16,721 per acre. As previously stated, I find that these particular sales are inappropriate for use because they were from a principal stockholder to his corporation and between two corporations having the same principals. Further, one of these sales did not involve any cash, the sole consideration being by virtue of a mortgage. Further, a sale of property on Church street in Alpine in 1971 was the subject of a paper subdivision at the time of the sale. This would reflect an increased value over raw land. I further find that a sale of a private golf course to a municipality presents serious questions as to whether the price paid was really the same price that could be obtained in the open market for the same property.

On the other hand, the approach by defendant's appraiser left much to be desired. His discounting the value of the subject property by virtue of the existence of a 200 foot buffer zone between it and Route 9W is very questionable. It is recognized that the property is zoned as a golf course or for residential property and not as commercial property. In view of the use to which the property is being put, and the fact that it is being valued as a golf course, the 200 foot buffer strip would be a definite advantage in the utility of the property. Instead of it being given a negative factor, it should be given a positive factor in its valuation. Further, defendant's expert failed to take into consideration the element of time in his comparable sales. He admitted that the value of land in the Alpine area had been increasing during the years prior to the critical date. Despite this, he made no effort to reflect that appreciation in his adjustments to the comparable sales that he utilized. Further, he attempted to deprecate the utility of the land by stating that it consisted of a rock base with only 3 to 4 inches of fill above it. Accepting this as a fact, its impact upon the value of this property as land used as a golf course would be minimal.

In reviewing the undisputed facts in this case and analyzing testimony and valuation reports of the respective experts who testified, I find that I cannot completely agree with either of the valuation experts. Accordingly, I have utilized those undisputed

facts, together with those portions of the respective testimony and opinions of the two experts which are most convincing, in order to reach a value of the property as raw land. See *Samuel Hird and Sons, Inc. v. Garfield*, 87 *N.J.Super.* 65, 208 *A.2d* 153 (App.Div.1965). That value is $15,000 an acre.

■ To the above value per acre, there is to be added the value of those improvements necessary to change the raw land into a golf course. In this respect, plaintiff's expert testified that there would be an additional cost of $35,000 each for 19 golf holes and $26,000 for three additional greens, or a total of $743,000. Defendant's expert testified that he recognized that the cost per hole to improve raw land to a golf course would be near or in excess of $30,000 per hole. However, he put a value of only $10,000 on each hole because, in his opinion, it should be reduced to show rapid depreciation. In this, he was clearly mistaken, as the property was being valued on a replacement cost basis.

See *New Brunswick v. State of N. J. Div. of Tax Appeals*, 39 *N.J.* 537, 547, 189 *A.2d* 702, 707 (1963), wherein it was stated: " . . . If the approach is reproduction cost, a deduction is made for *past* depreciation but depreciation to come plays no part. . . . "

In view of the conflict between the experts, I find that the value attributable to the golf course improvements should be $32,000 per hole, or a total of $640,000. The above results in a total land value, improved as a golf course, in the amount of $2,852,830, or $2,850,000. To this there should be applied the agreed common assessment ratio of 81.97 percent so that the total assessment value will be $2,336,145.

■ Apportioning the aforesaid land assessment value among the three lots involved would result in assessments in excess of the original assessments. Accordingly, the assessments will be limited to the original assessments. *Matawan v. Tree Haven Apartments, Inc.*, 108 *N.J.Super.* 111, 260 *A.2d* 235 (1969). As to Block 11, Lot 2, the land assessment value may exceed the original land assessment value provided the total assessment

value is not in excess of the original total assessment value. *Appeal of Kents*, 34 *N.J.* 21, 33, 166 *A.*2d 763 (1961); *Matawan v. Tree Haven Apartments, Inc., supra.*

The Clerk of the Tax Court will enter judgment as follows:

|  | Land | Improvements | Total |
|---|---|---|---|
| Block 11, Lot 2 | $1,700,600 | $1,034,200 | $2,734,800 |
| Block 11, Lot 4 | $35,200 | $ –0– | $35,200 |
| Block 20, Lot 2 | $585,100 | $ –0– | $585,100 |