CRABTREE, J. T. C.
This is a local property tax case wherein plaintiff seeks review of a judgment of the Essex County Board of Taxation reducing the 1979 assessment on defendant’s property located at 321 Pleasant Valley Way, West Orange, New Jersey (Block 176B, Lot 48). The assessment and county board action thereon were:
*584 County Board Assessment Judgment
$203,400 Land $1,173,400
Improvements 8,900 8,900
Total $1,182,300 $212,300
Plaintiff seeks restoration of the original assessment.
At issue are the highest and best use of the subject property and the effect of a lack of sewage disposal facilities in the determination thereof.
The subject property consists of 30.74 acres of land upon which a nine-hole golf course has been erected. In addition to the usual tee-to-green improvements[1] the site is improved with a small pro shop, putting green and driving range. Neither sanitary sewers nor septic tanks are available. The only waste disposal facility on the premises is a portable toilet.
In March, 1978 plaintiff adopted a new master plan whereby the subject property was rezoned for cluster housing. Under this new zoning, single-family-townhouse dwellings were permitted, with a maximum density of six dwelling units an acre.
Since at least 1969 the sewer line adjacent to the subject property has been inadequate, and in 1972 plaintiff was ordered by the New Jersey State Department of Health to correct sewer overflow problems in the line adjacent to the subject property. Plaintiff commissioned a series of engineering studies which, among other things, explored the possibility of (1) expanding the capacity of the existing pumping station, (2) installing a gravity feed system to connect with the Verona sewer system and (3) the use of an on-site disposal system. Other alternatives were considered, but rejected.
*585 Expansion of pumping station capacity was rejected by the 1977 engineering study (the Killam report) and by plaintiff’s town engineer because it would not increase sewer system capacity but merely shift the overflow, to another part of the line. Connection by means of a gravity feed system to the Verona sewer system, passing unavoidably through Verona Park, a part of the Essex County Park System, was deemed by the Killam report to be the most feasible alternative from an engineering point of view, but the report acknowledged the existence of environmental, political and economic problems. Approval for such a connection was required from the Borough of Verona, the Essex County Park Commission, the New Jersey Department of Environmental Protection (DEP) and the board of health of plaintiff municipality.[2] None of those approvals materialized by the assessing date, and there is no evidence to indicate when — if ever — the necessary approvals will be obtained. (The Essex County Park Commission expressly denied plaintiff permission to run a sewer line through Verona Park.)
Indeed, Richard Sullivan, a former DEP Commissioner, called as an expert witness by defendant, testified that, on the basis of his experience, the achievement of consensus among a multitude of governmental units and agencies with respect to water quality standards was extremely difficult. Sullivan also testified that, in his opinion, DEP would approve neither an on-site sewer system nor septic tanks in connection with proposed construction of dwelling units on the subject property.
I find, from the credible evidence in the record, that no sewage disposal system was available to the subject premises on or about October 1, 1978 and, on that date, there was no reasonable prospect that any such system would be installed in the foreseeable future. I also find that no developer or builder would purchase the property with a view to residential develop *586 ment without an unconditional guarantee of availability of sewers.
Plaintiff’s expert concluded that the highest and best use for the subject property was the use permitted by the zoning change effected under the new master plan, i. e., cluster-grouped, single-family and townhouse dwellings, six dwelling units to the acre, with a maximum of 184 units. He regarded the golf course as an interim use.
On the basis of allegedly comparable sales, which suggested a value of $8,000 a dwelling unit, he estimated the true value of the subject property to be $5,000 a unit, or $920,000 overall. He attributed the discount from $8,000 to $5,000 to the time required for municipal approvals and engineering studies and to the carrying charges incident to acquisition financing. He concluded that five years would be required to place the property in readiness for development. The expert assumed access to adequate sewerage facilities and, therefore, made no allowance for the absence of such facilities in the calculation of his discounted unit value.
Sewer service was available to all the comparable sale properties used by the expert in developing his estimate of value.
Plaintiff’s expert found additional support for his conclusion in four sales of properties devoted to recreational uses. I find that valuation for recreational use is inappropriate in this case. To begin with, the subject property is not zoned for recreational use. Plaintiff failed to show the probability of municipal approval of any application for a variance from or special exception to the zoning ordinance. Secondly, each of the allegedly comparable sites was considerably smaller than the subject. As defendant’s expert pointed out in his testimony, 30 acres would not be uged for a tennis club when no sewer service was available. Finally, the lack of sewers inhibits any alternate recreational use. Even the golf course lacks toilet facilities.
As stated above, the issue in this case is thé highest and best use of the subject property and the role of sewer availability in the determination thereof. Plaintiff’s expert concluded that the *587 highest and best use was cluster residential housing in accordance with prevailing zoning and planning ordinances, and that the existing use as a golf course was an interim use, to be ignored in estimating true value.
Highest and best use has been defined as the use that, at the time of appraisal, is the most profitable likely use. It is the “available use and program of future utilization that produces the highest present land value.” American Institute of Real Estate Appraisers, The Appraisal of Real Estate (7 ed. 1978), 43. Estimating the future highest and best use depends on many factors in addition to the site’s physical features. These may be legal, contractual or economic restrictions on use, or they may relate to market conditions. Id. at 137. Thus, the absence of public utilities affects value, Newark v. West Milford Tp. 9 N.J. 295, 88 A.2d 211 (1952); so does the existence of private deed restrictions. Englewood Cliffs v. Allison’s Estate, 69 N.J.Super. 514, 174 A.2d 631 (App.Div. 1961). Zoning restrictions also must be considered. State v. Gorga, 26 N.J. 113, 138 A.2d 833 (1958); State v. Wild Life Preserves, 134 N.J.Super. 287, 340 A.2d 665 (App.Div. 1975).
The fitness and availability of property for particular uses must be considered in arriving at taxable value, rather than the fact of actual use. In re East Orange Appeal, 80 N.J.Super. 219, 193 A.2d 377 (App.Div. 1963). Determination of highest and best use thus requires analysis of the likelihood of profitable alternate uses, Tax Appeals Div. v. Ewing Tp., 72 N.J.Super. 238, 178 A.2d 229 (App.Div. 1962), viewed as of the critical date, i. e., in tax cases, the assessing date. N.J.S.A. 54:4-23; Kearny v. Tax Appeals Div., 137 N.J.L. 634, 61 A.2d 208 (Sup.Ct. 1948), aff’d 1 N.J. 409, 64 A.2d 67 (1949). Such alternate uses, however, must not be “remote, speculative or conjectural.” American Institute of Real Estate Appraisers, op. cit. at 137-138; Tax Appeals Div. v. Ewing Tp., supra; State v. Wild Life Preserves, supra; Inmar Associates, Inc. v. Edison, 2 N.J.Tax 59 (Tax Ct. 1980). To put it differently, remote uses are irrelevant and property valuation should have some relationship to reality. *588 Hackensack Water Co. v. Old Tappan, 77 N.J. 208, 214, 390 A.2d 122 (1978).
In the instant case plaintiff’s conclusion as to highest and best use ignores the pivotal reality that sewers were not only unavailable on the assessing date but that, on that date, there was no reasonable probability that sewer service would become available at any time in the foreseeable future. Governmental restrictions, such as the requirement of adequate sewage disposal facilities, necessarily affect the determination of highest and best use, and real property cannot be valued as though the restrictions did not exist. State v. Wild Life Preserves, supra; Cappture Realty Corp. v. Elmwood, 126 N.J.Super. 200, 313 A.2d 624 (Law Div. 1973), aff’d 133 N.J.Super. 216, 336 A.2d 30 (App.Div. 1975); Halocarbon Products Corp. v. South River, 1 N.J.Tax 294 (1980).
The burden is upon plaintiff to demonstrate the reasonable probability of sewer availability in the foreseeable future, i. e., that the building restrictions imposed for lack of sewerage facilities will be removed. N.J. Turnpike Auth. v. Bowley, 27 N.J. 549, 143 A.2d 558 (1958). Plaintiff has not met this burden.
In view of the foregoing I conclude that the failure of plaintiff’s expert to account for the unavailability of a sewage disposal system and the likelihood that no such system would be available for the foreseeable future is fatal to the probative value of his opinion. An expert’s conclusion rises no higher than the data which provide the foundation. Passaic v. Gera Mills, 55 N.J.Super. 73, 150 A.2d 67 (App.Div. 1959), certif. den. 30 N.J. 153, 152 A.2d 171 (1959); Inmar Associates, Inc. v. Edison, supra. The probative weight of his comparable sales is also vitiated. The allegedly comparable properties were served by sewers, while the subject was not. Residential construction was permitted on the former and prohibited on the latter. The putative comparables provide no meaningful comparison with the subject. Filcrest Realty, Inc. v. Edison, 2 N.J.Tax 77 (Tax Ct. 1980).
*589 Plaintiff’s case necessarily rests upon the opinion evidence of its expert. The quality of that evidence falls far short of that required to overturn the presumption of correctness attending the county board judgment. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 89 A.2d 385 (1952). Indeed, the preponderance of the evidence is in irreconcilable conflict with the expert’s opinion.
Defendant’s expert estimated the value of the subject premises to be $315,000 on the assessment date and concluded therefrom that the assessment, after the application of N.J.S.A. 54:2-40.4 (chapter 123), should be $209,900, $2,400 less than the county board judgment. While the expert’s proofs are sufficient to demonstrate the invalidity of the original assessment, I am not persuaded by such proofs that a further assessment reduction, below the county board judgment, is warranted. Mathematical precision in the valuation of property for tax purposes is neither attainable nor required. Baldwin Constr. Co. v. Essex Cty. Bd. of Tax., 16 N.J. 329, 342, 108 A.2d 598 (1954). The difference between the county board judgment and the expert’s conclusion of assessed value is insubstantial in any event, and this, therefore, is a perfect case for the application of that venerable maxim, de minimis non curat lex. Schwartz v. Essex Cty. Bd. of Tax., 129 N.J.L. 129, 28 A.2d 482 (Sup.Ct. 1942).
Judgment will be entered affirming the judgment of the Essex County Board of Taxation.

 Slightly elevated, level tees, fairway bunkers, streams and ditches, green-side traps and greens.

DEP approval is required for water supply and sewage disposal systems proposed to serve 50 or more dwelling units in the same subdivision. N.J.S.A. 58:11-25.1. Similar approval must be given by the local board of health regardless of the number of units. N.J.S.A. 58:11-25.