HOPKINS, J.T.C.
These are consolidated appeals from judgments of the Essex County Board of Taxation which affirmed the assessments on nine tax lots for the years 1976 and 1977.
The subject property, totaling 171.48 acres, is located along the east and west sides of Ridge Road and along the east side of Reservoir Drive in the Township of Cedar Grove, Essex County, New Jersey. It is improved with a reservoir covering *69 approximately 93 acres, as well as the typical support and maintenance facilities associated with that use. The reservoir extends to the north into the Township of Little Falls. However, the value of that part of the tract is not an issue.
The property is divided into nine lots on the tax maps. However, for descriptive and valuation purposes, it can be considered as three separate parcels:
East side of Ridge Road West side of Ridge Road East side of Reservoir Drive
112.44 ± acres 53.60 ± acres 5.44 ± acres
East Side of Ridge Road
Block 231, Lot 1 Block 240, Lot 1 Block 260, Lot 1
17.43 ± acres 34.10 ± acres 60.91 ± acres 112.44 ± acres
This parcel contains both the reservoir proper, which covers 93 ± acres, and an upland perimeter of 19.44 ± acres which is mostly wooded or covered with scrub growth. The tract is bordered by Ridge Road to the west, Reservoir Drive to the south and east and the Township of Little Falls to the north. The topography of this tract is such that it forms a natural “bowl” which slopes upward toward its outside perimeter. This “bowl” is completed by a large concrete and earthen dam at the northwestern section of the tract along Ridge Road and a smaller concrete and earthen dam at the southern end of the tract along Reservoir Drive. The topography of the central portion of the tract, which is under water, is relatively flat since prior to its use as a reservoir it was composed of small farms. The large dam occupies approximately 11.2 acres of the tract and the smaller dam occupies approximately 1.4 acres of the tract. It was completed as a holding or balancing reservoir for the Newark water supply system in 1905 and its capacity is 675 billion gallons of water or approximately a nine-day supply.
*70 West Side of Ridge Road
Block 250, Lot 37 Block 250, Lot 81 Block 250, Lot 101 Block 250, Lot 141
5.56 ± acres 3.36 ± acres 4.26 ± acres 40,42 ± acres 53.60 ± acres
The southern corner of this parcel along Ridge Road, to the extent of 9.13 acres, is improved with various support and maintenance facilities for the reservoir, including a laboratory building, supervisor’s house, supervisor’s office and garage building. The tract is bordered by Ridge Road to the east, residential properties on Lakewood Avenue to the south, Bow-den Road and the Caldwell Branch of the former Erie Lackawanna Railroad to the west and residential properties on Briar-wood Terrace, The Fairway and The Glen to the north. The major portion of this tract slopes sharply downward in an easterly direction from Bowden Road toward Ridge Road and is unimproved, heavily wooded and covered with scrub growth. The land is clear and relatively level at the small improved area at the southern corner of the tract along Ridge Road. The entire parcel is traversed east-to-west by a water pipeline running from Ridge Road to Bowden Road.
East Side of Reservoir Drive
Block 261, Lot 1
5.44 ± acres
This is a long, narrow parcel of unimproved land bordered by Reservoir Drive to the west, Normal Avenue to the south, the Township of Little Falls to the north and other vacant and unimproved lands to the east. The topography of this tract generally slopes upward from Reservoir Drive in an easterly direction, with severe slopes and sharp outcroppings of rock in some sections. The entire parcel is heavily wooded and covered with scrub growth.
In addition to the three parcels above, there is a small triangular plot formed by the intersection of Ridge Road and *71 Reservoir Drive designated by the township as Block 232, Lot 101. Because of its size and location, this parcel has virtually no utility and both parties considered it to have only nominal value.
The entire property is zoned for use as a reservoir or for single family residential housing. Public utilities are available to all parcels.
The following schedule details, for both 1976 and 1977, the total assessed values, as affirmed by the county board, as well as the claimed values by both Newark and Cedar Grove.
Assessment
Newark’s Claimed Value
Cedar Grove's Claimed Value
$2,660,900
$1,176,000
$3,400,000
In concluding a value of $1,176,000 for the subject lots, Newark’s appraisal expert stated that the highest and best use of the property was for residential development. On that basis, he reduced the number of acres which could be utilized for that purpose by subtracting the 12.6 acres on which the dams were located and valued the remaining 158.88 acres. In so doing, he concluded, on the basis of six comparable sales of acreage, that the 99.84 acres which were under water had a value of $10,000 an acre. He reduced that value by $467,125, which represented the estimated cost of restoring the land to its original condition by removing the dams, pipelines, gatehouses and riprap. The 53.60 acres on the west side of Ridge Road were valued at $10,200 an acre and the 5.44 acres on the east side of Reservoir Drive were valued at $18,000 an acre. He gave the small triangular lot a nominal value of $100.
Cedar Grove’s expert testified to a value of $3,400,000 based upon having the property considered either completely residential or, alternatively, having the underwater portion deemed a reservoir and the upland part residential. In the event that the total acreage was to be considered reservoir property, his value was $3,000,000. In reaching his values, he used both a trending of original cost approach as well as the comparative approach. *72 His trending value was computed by first determining the cost per acre of the land when it was acquired by Newark and adding thereto a figure representing improvements which he estimated to be 20% of the cost of the land. He then added another figure, representing 30% of the former figures, which represented the increased value between 1900 and 1910. The resulting figure of $808, rounded to $800, was then used as a base to which he applied a percentage increase, obtained from the Engineering News Record Construction Cost Index for the year 1913, to the average of that index for the tax years 1975 and 1976. The resulting figure attributed a value of $17,500 an acre to the land, or $3,000,000 for the total acreage. In his comparative approach, he utilized six sales to conclude a value of $22,500 an acre, or $3,856,800 for the total tract. From this he subtracted $467,125 as the cost to prepare the site for residential development, including the removal of portions of the dams. The adjusted value of $3,389,675 was rounded to $3,400,000. The cost for site preparation was the same as that used by Newark’s expert and was based on a report prepared by the Cedar Grove Department of Engineering.
 The assessment of reservoir lands owned by municipal waterworks is governed by N.J.S.A. 54:4-3.3 which provides that it shall be done “without regard to any buildings or other improvements thereon, in the same manner and to the same extent as the lands of private persons.” Private water utilities, alternatively, have their reservoir lands taxed pursuant to N.J. S.A. 54:30A-52 which provides that “[a]ll the real estate as herein defined ... shall be assessed ... in the manner provided by law for the taxation of similar property owned by other corporations or individuals.” Further, N.J.S.A. 54:30A-50 defines such real estate to exclude dams and reservoirs except to the extent of the land on which they are located. Therefore, in valuing for assessment purposes, municipal lands cannot be valued as part of the integrated utility while privately owned public utility lands may be so valued. Hackensack Water Co. v. Old Tappan Boro., 77 N.J. 208, 214, n. 1, 390 A.2d 122 (1978). A standard technique of valuation is to examine comparable *73 sales. Id. 77 N.J. at 215, 390 A.2d 122. See also Newark v. W. Milford Tp., 9 N.J. 295, 303, 88 A.2d 211 (1952). Further, the trending of the original costs may be considered. Hackensack Water Co. v. Old Tappan Boro., supra, 77 N.J. at 217-218, 390 A.2d 122.
In the valuation process, it is first necessary to determine the highest and best use of the land. This principle was discussed in West Orange v. Goldman’s Estate, 2 N.J.Tax 582 (Tax Ct.1981), as follows:
The fitness and availability of property for particular uses must be considered in arriving at taxable value, rather than the fact of actual use. In re East Orange Appeal, 80 N.J.Super. 219, 193 A.2d 377 (App.Div.1963). Determination of highest and best use thus requires analysis of the likelihood of profitable alternate uses, Tax Appeals Div. v. Ewing Tp., 72 N.J.Super. 238, 178 A.2d 229 (App.Div.1962), viewed as of the critical date, i.e., in tax cases, the assessing date. N.J.S.A. 54:4-23; Kearny v. Tax Appeals Div., 137 N.J.L. 634, 61 A.2d 208 (Sup.Ct.1948), aff’d. 1 N.J. 409, 64 A.2d 67 (1949). Such alternate uses, however, must not be “remote, speculative or conjectural.” American Institute of Real Estate Appraisers, op. cit. at 137-138; Tax Appeals Div. v. Ewing Tp., supra; State v. Wild Life Preserves [134 N.J.Super. 287, 340 A.2d 665 (App.Div.1975) ], supra; Inmar Associates, Inc. v. Edison, 2 N.J.Tax 59 (Tax Ct.1980). To put it differently, remote uses are irrelevant and property valuation should have some relationship to reality. Hackensack Water Co. v. Old Tappan, 77 N.J. 208, 214, 390 A.2d 122 (1978). [2 N.J.Tax at 587-5881
In Hackensack Water Co. v. Old Tappan Boro., supra, the court held that valuation should have some relationship to reality. It then reversed a finding that reservoir land, which was being utilized as a reservoir by its owner who provided water to approximately 800,000 customers in Bergen and Hudson Counties, should be valued as residential land when the cost of preparing it for residential purposes exceeded the resulting value of the land. After pointing out that remote uses are irrelevant, it stated that it would have been proper to consider the highest and best use of the land to be a reservoir. See also Hackensack Water Co. v. Haworth Boro., 178 N.J.Super. 251, 428 A.2d 934 (App.Div.1981) where the court reversed a reservoir valuation which was predicated upon treating the reservoir as a lake with the upland property to be valued as a residential lake community. In so doing, it held that such use was too remote and thus irrelevant.
*74 The subject property had been used as an integral part of the Newark water supply system for over 75 years. There was nothing to indicate that the east side of Ridge Road, which will be treated as the reservoir portion, would, in the foreseeable future, be used for anything other than a part of the Newark water supply system. Unless it can be shown that a similar reservoir could be purchased or constructed by Newark at a cost which is less than that which Newark could realize on the sale of the subject property, it must be concluded that the reservoir portion, as well as the 9.13 acres located on the west side of Ridge Road where the reservoir support structures are located, should be valued on the basis that the highest and best use is as a reservoir.
Cedar Grove’s expert attempted a trending approach as one of his two means of valuing the property. The methodology used had a basic error in that the trending factor was the Engineering News Record Construction Cost Index which is based on the average cost of 200 hours of common labor at 20 designated cities’ average rate, plus 25 CWT of standard structural steel shapes at the mill price, plus 1088 board feet of 2 by 4 lumber at 20 designated cities’ average price. When he attempted to corroborate the trend of that index with various indexes such as ones prepared by the Department of Commerce, Federal Highway Administration, American Appraisal Co., Turner Construction Co., etc., he utilized an Engineering News Record Construction Cost Index which did not include common labor. That latter index fell within the range of the increases in the other indexes. However, the index which he actually used to trend a value for the subject property was on the extreme end of the other indexes. Since it was at the extreme of the other indexes, it was not in any manner corroborated by them. Accordingly, there is no way in which this court can conclude that the construction cost index represented a meaningful corollary to land value increases in Cedar Grove.
Having determined that the highest and best use of the reservoir property is as a reservoir, we are faced with the fact *75 that there were no sales of reservoirs to which we can look in the search for value. In a comparable situation involving the valuation of a golf course, it was recognized that where the highest and best use of land was as a golf course, and where the zoning also permitted residential construction, the cost approach to value required the land to be first valued as unimproved land by comparing it with raw land similarly zoned. Alpine v. Alpine Hills, Inc., 1 N.J.Tax 136, 142 (Tax Ct.1980), aff'd. 179 N.J.Super. 65, 430 A.2d 641 (App.Div.1981); see also Pa. Gas & Water Co. v. Pa. Tpk. Comm’n., 428 Pa. 74, 236 A.2d 112 (Sup.Ct.1967), which was noted in Hackensack Water Co. v. Old Tappan Boro, supra, 77 N.J. at 217, 390 A.2d 122, where the value of a reservoir for condemnation purposes was based on replacement cost.
In so valuing the reservoir land, the improvements such as dams, pipes and structures will not result in negative adjustments because of the highest and best use of the property. As stated in In re Appeal of the City of East Orange, 103 N.J.Super. 109, 112, 246 A.2d 722 (App.Div.1968), which also involved the valuation of municipally owned reservoir land, the sole question is the true value as of the assessment date of raw undeveloped land.
The balance of the property, which is not necessary to the operation of the reservoir, will also be valued as raw land available for residential development. In so doing, it is noted that the 5.44 acres on the east side of Reservoir Drive have sharp slopes and rock outcroppings which would make it more difficult to develop as residential property than the balance of the property on the west side of Ridge Road. Also, there is a water main running through the property on the west side of Ridge Road which the parties have treated as an easement. While, for purposes of the reservoir, that water main could be considered an improvement not subject to assessment, its consideration as an easement will not have a material effect on the value since a developer could plan a subdivision around it.
Both experts utilized six sales in support of their value opinion for the subject property. Four of the six sales utilized *76 by Newark’s expert occurred subsequent to the last assessment date here involved and, accordingly, may only be used to corroborate the value arrived at on the basis of facts known or reasonably ascertainable as of the assessment dates. New Brunswick v. Div. of Tax Appeals, 39 N.J. 537, 545, 189 A.2d 702 (1963); Fort Lee v. Invesco Holding Corp., 3 N.J.Tax 332 (Tax Ct.1981), aff’d 6 N.J.Tax 255 (App.Div.1983), certif. den. 94 N.J. 606, 468 A.2d 238 (1983). Cedar Grove’s expert included in his six comparables two sales occurring in Roseland, a community which was not contiguous to Cedar Grove and, further, which comparables had already received preliminary subdivision approval prior to the sales. Evidence of comparable sales is effective in determining value only where there is a substantial similarity between the properties so as to admit of reasonable comparison. Venino v. Borough of Carlstadt, 1 N.J.Tax 172 (Tax Ct.1980). He also utilized two of the three sales which Newark’s assessor used and which occurred after the assessment dates. Of the remaining sales, both experts utilized a sale occurring in Cedar Grove in October 1971 wherein an 87.041 acre plot was sold for $4,593 an acre. This lot was residentially zoned as was the subject property. Its physical characteristics included outcroppings of rock which would interfere with development. The next relevant sale utilized occurred in May 1972 and showed that 13.5 acres sold for $14,815 an acre. It, too, was residentially zoned and while it had a water supply source on it prior to development, storm sewers had to be installed and brought out to Bradford Avenue. It also contained pockets of bedrock. The next relevant sale, chronologically, which was utilized by Cedar Grove’s expert, occurred in West Orange in December 1976. While West Orange is separated from Cedar Grove by a small area of Verona, the housing in the area was similar to the type of housing surrounding the subject property. Further, it was in a flood hazard zone. However, at that time, West Orange was more fully developed as a residential community than Cedar Grove and that factor should be given consideration. In so doing, the sale merely indicated rising prices for that type land *77 during the period 1972 through 1976. Accordingly, it is concluded that the subject property, which is west of Reservoir Drive, and which was considered by the parties to be more susceptible of development than the most comparable sales, will have a value of $15,500 an acre during the tax years here involved. The property east of Reservoir Drive, which had rock outcroppings which would add to the difficulty of development, is to be valued at $14,500 an acre. Utilizing those sales which were subsequent to the assessment dates for the purpose of corroborating the above values, it is noted that the Park Ridge Estate sales, which both experts utilized, occurred during April and May 1979. That total sale of 112.977 acres was made in three distinct transactions. While the average price an acre was $10,494, it should be noted that the property was immediately adjacent to Pompton Avenue, a state highway, with only very limited access. It was very rocky and considered very difficult to develop. Further, the purchaser, in order to obtain subdivision rights, had to agree to pay $250,000, which was one half the cost of constructing a water tank to service the property. Accordingly, that sale price, in order to compare it to the subject properties, should be adjusted upward by at least 60%.
Both experts also utilized the sale of 5.0833 acres in Cedar Grove, known as the Vincent’s Hilltop Villa sale, which occurred in September 1979 and which sold for $30,099 an acre. This property was considered difficult to develop and also had rock outcroppings. That sale, in and of itself, could not corroborate the values as of the assessment dates. However, it should be considered in light of two subsequent sales, both of which were in Cedar Grove, in May 1980 and February 1981. Those sales covered 18.245 and 26.02 acres respectively and sold for $18,635 an acre and $15,649 an acre respectively. While they are considered to be relatively remote in time, they indicate that the September 1979 sale for $30,099 an acre was outside the normal range for corroboration purposes. Further, the 1980 and 1981 sales did have some proximity to the subject property and had rock outcropping problems which would add to the difficulty of development.
*78 Eliminating the Vincent’s Hilltop Villa sale, the subsequent sales do corroborate the values previously concluded.
 Accordingly, the total value of all nine lots in Cedar Grove is $2,696,730. In concluding the above values, it must be recognized, as stated in Newark v. W. Milford Tp., supra, 9 N.J. at 303, 88 A.2d 211, that “[i]t is not possible to measure with mathematical precision the value of the lands here assessed because comparable property of private water companies are rarely the subject of sale and their assessment is based upon additional factors not here present.” The comparables used were all smaller tracts than the subject property. Thus, the party contesting the assessments has the burden of proof to show, by a preponderance of the evidence, that the assessment is incorrect. Riverview Gardens v. North Arlington Boro., 9 N.J. 167, 174, 87 A.2d 425 (1952). Recognizing this, as well as the fact that the total of the original assessments was $2,660,-900 and that the value concluded amounts to $2,652,500, it is deemed that the difference is so unsubstantial as to require the conclusion that Newark has failed to prove that the assessment was erroneous. In this respect it is noted that “valuation for taxation cannot be dollar precise”. New Brunswick v. Div. of Tax Appeals, supra, 39 N.J. at 550, 189 A.2d 702.
The Clerk of the Tax Court is directed to enter a judgment affirming the assessments for both years.