CITY OF NEWARK, A MUNICIPAL CORPORATION, PLAIN-
TIFF-RESPONDENT AND CROSS-APPELLANT, v. TOWN-
SHIP OF WEST MILFORD IN THE COUNTY OF PAS-
SAIC, DEFENDANT-APPELLANT AND CROSS-RESPOND-
ENT.

Argued March 31, 1952—Decided April 28, 1952.

298

*Mr. Joseph L. Lippman* argued the cause for the defendant-appellant and cross-respondent (*Messrs. Wallisch & Wallisch,* attorneys; *Mr. Herbert H. Fine,* of counsel).

*Mr. Charles Handler* argued the cause for the plaintiff-respondent and cross-appellant (*Mr. Vincent J. Casale,* of counsel).

The opinion of the court was delivered by

OLIPHANT, J.   This is an appeal of the Township of West Milford from a judgment of the Division of Tax Appeals, Department of the Treasury, fixing the assessment on certain watershed property owned by the City of Newark at $1,391,-100 for the years 1948-49-50.

The appellant seeks to have the original assessments for each year as made by the local assessor restored.  The City

of Newark, on the other hand, cross-appeals claiming the assessment fixed is excessive and seeks to have it established at true value. These appeals have been certified here on our motion.

The assessments for the years 1948, 1949 and 1950 are involved and it was stipulated that the testimony for the year 1948 would constitute the record for the years 1949 and 1950 as well. The assessments for each of the years are as follows:

| | |
|---|---|
| 1948 ...  ........ ... | $1,483,840 |
| 1949 ... .        .... . | 1,854,800 |
| 1950 ............. | 1,887,125 |

The land involved consists of 18,548 acres located in the Township of West Milford. On part of the property a reservoir is located but the rest of the property can be classified as watershed property and part of the Newark water supply system.

The property is assessed for local taxation pursuant to the provisions of *R. S.* 54:4–3.3, which provides *inter alia*:

"* * * The lands of counties, municipalities, and other municipal and public agencies of this State used for the purpose and for the protection of a public water supply, shall be subject to taxation by the respective taxing districts where situated, at the true value thereof, without regard to any buildings or other improvements thereon, in the same manner and to the same extent as the lands of private persons, but all other property so used shall be exempt from taxation."

Appeals were taken from all the assessments as originally fixed by the township to the county board of taxation and the assessments of the lands were affirmed. Thereafter the City of Newark took an appeal to the Division of Tax Appeals which entered three separate judgments reducing the value for each of the said taxable years to the figure for which the lands were assessed in 1947, $1,391,100.

The appellant-township's contention is that the Division of Tax Appeals disregarded the testimony before it and

founded its judgments solely upon the tax history of the property, and it further argues that while the Division gave weight to the testimony of the expert Reidel, who testified for the City of Newark, they misapplied his testimony in applying it to the classifications and categories of land which in the aggregate make up this watershed property. They further argue that there is a presumption that each original assessment is legally correct and that the proof of the City of Newark failed to overcome or weaken this presumption.

The City of Newark, on the other hand, contends that the testimony in behalf of the Township of West Milford clearly indicates that its property was not assessed at true value according to the statute and the increase in the assessments for the years 1948-49-50 was not justified on the testimony given by the experts for the township, and that the true value of the property for tax purposes is the figure given by the City of Newark's expert as $590,117.

While it is within the power of this court under *Article VI, section V, paragraph* 3 of the *Constitution of 1947* and *Rule* 3:81-13 to exercise original jurisdiction and fix the assessment in question for the taxable years, this is a power which should not be exercised in the absence of imperative necessity which does not exist here. And for the further reason that an examination of the appendices and original transcript in this case clearly and definitely renders this impossible in view of the confused and contradictory state of the record, and the failure to apply what we deem to be controlling principles of taxation under the statute in question.

At the outset it should be noted that the statute applies only to the lands of the municipality and exempts its other property in the watershed.

We apprehend that the purpose and intent of the statute, *R. S.* 54:4-3.3, is to distribute the tax burden of the taxing district equably between the municipality owning watershed lands and the lands of the other taxpayers of the district. It subjects such lands to taxation at their true value on the

same terms and conditions as the lands of the other taxpayers in the district are subjected to. The scheme is essentially different from the method of taxing property of private companies. *Cf. Millville Water Co. v. City of Millville,* 84 *N. J. L.* 411 (*E. & A.* 1913).

The statute impliedly prohibits an assessment of such lands as part of an integrated utility with the resultant increment to the value of such lands because of their integrated use. An assessment on such a basis necessarily would result in a higher valuation and would burden the municipality owning the watershed property with a disproportionate share of the tax burden of the taxing district. Since under the statute the lands as such cannot be sold at a private sale by private contract as hereinafter pointed out, and since also a sale of such a vast tract is ordinarily a practical impossibility, any valuation placed upon such lands on a theoretical sale basis would in all probability result in a valuation much lower than the value of the aggregate of comparable lands of private persons. In this second instance a disproportionate share of the tax burden would necessarily fall or be visited upon the other taxpayers in the district.

The operation of a watershed and reservoir such as we have here is the exercise of a proprietary function by the municipality owning it. This proprietary function is strictly regulated by statute and all actions with respect thereto on the part of the municipality are subject to related statutory provisions, among which are *R. S.* 40:62–47 to 40:62–105 and *R. S.* 58:1–1 to 58:17–6, where applicable.

We know of no statutory provision, and none has been pointed out to us, whereby a municipal owner of a watershed property could become a willing seller of an entire reservoir and watershed, within the meaning of that phrase as used in cases relating to taxation.

The statute requires that such lands shall be subject to taxation "at the true value thereof * · * * in the same manner and to the same extent as the lands of private persons." The statute was and is consistent with *Article IV,*

*section VII, paragraph* 12, *Constitution* (1844) and *Article VIII, section I, paragraph* 1, *Constitution* (1947). The phrase "at true value" has a constitutional and historical meaning in the law of taxation of this State. True value is the consideration of the market value of the property at a fair and *bona fide* sale at private contract. True value of property of any kind is in essence the value it has in exchange for money. *Hackensack Water Co. v. Division of Tax Appeals,* 2 *N. J.* 157, 163 (1949).

▐ Since the lands must be assessed in the same manner and to the same extent as lands of private persons, the assessments are required to be made pursuant to *R. S.* 54:4–23, under which the test is what "it would sell for at a fair and *bona fide* sale by private contract on October first next preceding the date on which the assessor shall complete his assessments * * *." By its very terms *R. S.* 54:4–3.3 is expressly *in pari materia* with *R. S.* 54:4–23.

It is not possible to measure with mathematical precision the value of the lands here assessed because comparable property of private water companies are rarely the subject of sale and their assessment is based upon additional factors not here present. *Hackensack Water Co. v. Division of Tax Appeals, supra, p.* 163; *cf. Haworth v. State Board of Tax Appeals,* 127 *N. J. L.* 67 (*Sup. Ct.* 1941). The lands here in question cannot be sold by private contract, and because of the vast acreage involved there are few if any comparable holdings in the hands of private persons. So it follows that the assessment of these lands cannot be fixed with any degree of mathematical exactness but must be fixed by a reasonable and equable comparison with the true value of smaller comparable holdings of private persons. A reasonably approximate and comparable true value based upon the same principles of taxation applicable to these holdings of private persons will be a compliance with the statutory direction.

▐▐ Property to be assessed must be valued in the actual condition in which the owner holds it, *Trustees of Stevens Institute of Technology v. State Board,* 105 *N. J. L.* 99

(*Sup. Ct.* 1928), affirmed 105 *N. J. L.* 655 (*E. & A.* 1929), and if part of the property is held as a farm, the question would not be what would any particular part bring on sale, if separated, but what the whole thing would bring at private sale, since the land must be valued in the exact condition that the owner holds it. *Colwell v. Abbott,* 42 *N. J. L.* 111 (*Sup. Ct.* 1879). The word "parcel" as used in *R. S.* 54:4–23 means a unit of land, together with concomitant improvements, if any.

The transcript discloses that the lands here in question are without the services of any utility for public use except some single electric lines in a small part of the aggregate. This is a factor that will have to be considered with respect to comparable lands of similar topography and nature because the lands in the use to which they are held are not comparable to lands of similar topography which are being used and developed for homes by a private owner and serviced by the usual public utilities, water, electricity, sewage, gas, etc., or some of them, and which are on roads maintained by the State, county or township.

While the Division of Tax Appeals gave consideration to the testimony of the four witnesses who appeared before it, its judgment was rested principally on the tax history of the property and the 1947 assessment of $1,391,100, with reliance on the authority of *Skouras Theatres Corp. v. State Board of Tax Appeals,* 123 *N. J. L.* 52 (*Sup. Ct.* 1939); *Hackensack Water Co. v. State Board of Tax Appeals,* 129 *N. J. L.* 535 (*Sup. Ct.* 1943), but in each of those cases the court relied on other testimony in the record.

Here the tax history consists merely of a record of the prior assessment which may or may not reflect the true value for the years here in question, and this appeal and cross-appeal suggest this more strongly than the failure of City of Newark to appeal from the 1947 assessment. If that assessment was incorrect the failure to appeal, if the tax history of the assessment alone was the criterion, would merely perpetuate the error. The record is so sparse on this

phase of the question that we can go no further than to say
it is a factor which can be considered. While no point has
been made by either party with respect to the so-called "freeze
statutes," *R. S.* 54:3–26 and *R. S.* 54:2–43, as amended by
*L.* 1946, *c.* 161, we deem these sections inapplicable since no
appeal was taken in 1947 either to the Division of Tax Ap-
peals or the county board of taxation. *Cf. Riverview Gardens,
Inc., v. Borough of North Arlington,* 9 *N. J.* 167 (1951).

Turning now to the record, we shall endeavor to point
out certain errors in the approach of the various experts.
The City of Newark presented through one Heilman testi-
mony as to the entire acreage and topography of the aggregate
of lands, breaking it down into classifications such as good
fields, old fields, upland both wooded and plain, swamps,
reservoir sites, and storage facilities. We think this testimony
was both relevant, material and competent since Heilman,
both an engineer and forester, was familiar by virtue of his
position and actual observation of the property over the
years, and was qualified and competent to testify to this
extent.

The Township of West Milford through its engineer
and surveyor, Rude, presented somewhat similar testimony
as to classifications of land, *etc.,* and as to this his testimony
was likewise qualified and competent. But his further testi-
mony wherein he subdivided some of the classifications of
the watershed lands and certain allegedly comparable lands
owned by private persons into lots with 50- and 100-foot
fronts by scaling off such lots on maps of the City of Newark
and the township and on some available geodetic maps, was
irrelevant and incompetent. The lands in question were
neither held nor used in such state nor assessed on a lot
basis. *Potter v. Orange,* 62 *N. J. L.* 192 (*Sup. Ct.* 1898);
*cf. Paulison v. Taylor,* 35 *N. J. L.* 184 (*Sup. Ct.* 1871).
As far as we can discover from the transcript, most of these
allegedly comparable lands were assessed on an acreage basis
in single parcels to each owner as required by *R. S.* 54:4–23,
as above pointed out, and without regard to their topograph-

ical components and the future possibility of subdivision into lots by its owner. Until such land is so subdivided and assessed as lots, it has to be considered as one parcel for assessment purposes.

However, we are not to be understood as saying the value of such comparable land so subdivided and assessed is not evidential on the question of the value of comparable lands held by the City of Newark adjacent to such lands, merely because such lands of the City of Newark are not subject to subdivision into lots by law, provided, however, that due allowance is made if reasonably approximate similar public utilities are not available to the lands owned by the city.

There is some variance between the classification of value made by Heilman and Rude, but since we are not making the assessment, the reconciliation of these differences should be made wherever possible by the Division of Tax Appeals on the hearing on remand.

As to the testimony concerning value given by the real estate expert of the City of Newark, in some instances his values seemed to proceed on the theory that particular parcels did not contribute more to the value of the watershed than lands in other classifications. The Division of Tax Appeals seems in accord with this view since it said: "However there is no proof that land fronting on a concrete highway * * * contributed more to the value of the water-shed than lands in other classifications such as lands fronting on improved roads, graded roads, fields, and woodlands." A consideration of the contribution of a particular parcel or parcels to the value of the watershed as a whole would pervert the purpose and scheme of the statute to assess these lands in the same manner and to the same extent as the lands of private persons and thus assure an equable distribution of the tax burden of the taxing district between the lands of the city-owned watershed and those of private persons. The lands of both are to be assessed in the manner and to the extent required by *R. S.* 54:4–23. See *Hackensack Water Co. v. Division of Tax Appeals,* 2 *N. J.* 157, *p.* 163 (1949) and cases cited there.

■ The real estate expert for the township was indefinite as to how he valued the property of the city except that his value for the respective years was identical with the assessment. He also, for valuation purposes, subdivided the land into 100-foot lots. He testified that he increased the value from $1,483,000 in 1948 to $1,854,000 on the ground, "I guess the raise in prices all about it and the demand for such properties." In *Hackensack Water Co. v. Division of Tax Appeals, supra,* at *p.* 163, we said that an economic condition "in itself is not a sufficient reason for an increase in valuation any more than a depression would call for a downward revision in accordance with new market conditions thereby created, however temporary. Value for the purposes of taxation has some measure of permanency which renders it secure against general temporary inflation or deflation."

■ While there is a presumption of correctness in favor of the assessment made by the local assessor, such a presumption is rebuttable. *Craven v. State Board of Tax Appeals,* 130 *N. J. L.* 362 (*Sup. Ct.* 1943); *Camden County Realty Co. v. State Board of Tax Appeals,* 131 *N. J. L.* 132 (*Sup. Ct.* 1944). The testimony of the township expert raises a serious doubt as to the correctness of the assessments for the years subsequent to 1947.

■ The City of Newark attempted to prove the value of its property by offering the records of assessments of comparable parcels assessed to private owners. These records would be evidential to establish discrimination, but before discrimination could be established the true value of the lands of the city of Newark for the purpose of taxation would have to be established. *Cf. Royal Mfg. Co. v. Board, etc.,* 78 *N. J. L.* 337 (*E. & A.* 1909). Without this there would be no basis for a charge of discrimination. If all the lands are undervalued, including those of the City of Newark, there would be no case of discrimination unless it could be shown that such general evaluation visited a disproportionate share of the tax burden upon the City of Newark. The proposition that because of undervaluation of the other lands the value

of the lands of the city should be reduced, may appeal to a sense of fairness but it is not legally sound. *Long Dock Co. v. State Board,* 89 *N. J. L.* 108, *p.* 115 (*Sup. Ct.* 1916), affirmed 90 *N. J. L.* 701 (*E. & A.* 1917).

The problem presented to the State Division of Tax Appeals is not without difficulty under the applicable statutes. The true value of these watershed lands can only be reasonably approximated and will have to be determined by comparison of the representative component parts of the various classifications of the lands, which in the aggregate make the total of 18,548 acres, with the true value of comparable parcels of land owned by private persons adjacent to the watershed or reasonably nearby in the township, measured by the standard of value established by a fair and *bona fide* sale at private contract.

Such lands need not match exactly as do the parts of a jig-saw puzzle, nor is it necessary to compare for value each and every square rod or acre in this vast tract. The value of the aggregate of these lands may be established by a comparison of a representative number of comparable parcels owned by private persons to an equally representative and comparable number of tracts or parcels in the various classifications of the lands making up the watershed, to the extent that the sum total of such values established will represent such a percentage of the total that the value of the lands of the entire watershed may be reasonably approximated therefrom.

The judgment of the State Division of Tax Appeals is reversed and the cause remanded to be proceeded with in accordance with this opinion and the practice and procedure of the Division of Tax Appeals. No costs to either side.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.