104 N.J. Super. 147 (1969)
249 A.2d 14
CITY OF CLIFTON, PETITIONER-RESPONDENT,
v.
NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 1968.
Decided January 10, 1969.
*148 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Oscar R. Wilensky argued the cause for appellant.
Mr. Frank A. Carlet, First Legal Assistant, argued the cause for respondent (Mr. Arthur J. Sullivan, Jr., attorney).
Mr. Arthur J. Sills, Attorney General of New Jersey (Mr. William Gural, Deputy Attorney General, of counsel), filed a statement in lieu of brief on behalf of the Division of Tax Appeals.
The opinion of the court was delivered by KILKENNY, J.A.D.
North Jersey District Water Supply Commission (hereinafter Water Commission) appeals from two judgments of the State Division of Tax Appeals (hereinafter State Division) fixing the assessed valuations for the *149 year 1964 of certain lands owned by the Water Commission and located in Clifton. One tract, known as Block 353, Lot 10, has been valued by the State Division at $151,200, the same as the city's original assessment. The other tract, Block 353, Lots 60A-62A-65C, has been valued by the State Division at $38,000, as compared with the city's $43,000. There is no cross-appeal by the city.
The Water Commission urges two grounds for reversal. It argues: (1) The premises are tax exempt, and (2) they were not valued according to their actual use.
The Water Commission is a public water supply agency. It is organized and operates pursuant to R.S. 58:5-1 et seq. Its Wanaque reservoir is located in the boroughs of Wanaque and Ringwood, in Passaic County. The reservoir's lands and protective area comprise approximately 6,300 acres. Extending for 18 miles from the reservoir through a number of municipalities is a right-of-way used for large transmission aqeducts. Lot 10 in Clifton is used primarily for a "balancing tank" for the purpose of equalizing water pressures through the pipelines leading to various municipalities. It is not a collecting reservoir or source of water supply, but it is an appurtenance to the transmission system. The tank holds 15 million gallons of water.
Clifton did not assess the improvements. It did assess the lands where the balancing tank is located, and it assessed the lands in its city which constitute part of the right-of-way for the large aqueducts of the transmission system.
From 1961 through 1963, Lot 10, consisting of 7.56 acres, was assessed at an average of $1,650 per acre. The other three plots, consisting of 1.9 acres, were assessed at an average of approximately $1,200 per acre. The assessments for 1964, now under review, averaged $20,000 and $21,500 per acre respectively. The Water Commission did not challenge the city's right to assess these lands for tax purposes, or the amount of the assessed valuations, for many years prior to 1964 because of the relatively small amount of taxes involved. *150 The substantial increases in the 1964 assessed valuations prompted the instant appeals.
The city's right to assess the lands of the Water Commission is based upon R.S. 54:4-3.3, which provides as follows:
"The lands of counties, municipalities, and other municipal and public agencies of this State used for the purpose and for the protection of a public water supply, shall be subject to taxation by the respective taxing districts where situated at the taxable value thereof without regard to any buildings or other improvements thereon, in the same manner and to the same extent as the lands of private persons, but all other property so used shall be exempt from taxation." (Italics ours)

I
The Water Commission concedes that its watershed lands are taxable because they are used "for the purpose and for the protection of a public water supply." (Emphasis added.) But it contends that the taxing statute, supra, does not authorize the taxing of its lands used for the transmission and distribution of water. It asks us to draw a distinction between lands used for the purpose and protection of a "public water supply," expressed in the tax-allowing statute, and lands used in connection with a "public water supply system," for which it claims tax immunity as public lands not expressly permitted to be taxed by any statute.
We agree with the State Division that a fair interpretation of R.S. 54:4-3.3 does not warrant such a distinction. Lands used "for the purpose and for the protection of a public water supply" would include the lands in question. They are for the purpose of a public water supply, albeit they are used as part of the system whereby that purpose is effected.
The Water Commission, as indicated by its own conduct over a long period of time in paying the annual tax levies upon the subject lands, never asserted the existence of the distinction for which it now contends. It paid similar tax assessments to the other municipalities through which its aqueduct right-of-way extends. Long-continued practical interpretation by the parties involved of a statutory provision, *151 without legislative change, as in the instant case, supports the finding of concordant legislative intent. It is clear that the Water Commission has been motivated in seeking a different interpretation only because the assessments were substantially increased.
In Jersey City v. Blum, 101 N.J.L. 93 (E. & A. 1924), the court reviewed the validity of taxes levied by nine municipalities on lands owned by Jersey City on which were located:
"* * * the reservoir, dam, pipes, conduits, etc., constructed in or laid through these various municipalities, and used for the purpose of providing inhabitants of Jersey City with a water supply." (at p. 93; italics ours)
It held that the tax was valid and enforceable, as a statutory exception to the general rule that property of the State or its poliical subdivisions is excluded from the operation of general statutes imposing taxation. In the Jersey City v. Blum case the taxing statute therein was a 1910 counterpart of the present R.S. 54:4-3.3 and contained practically identical language.
See, too, City of Newark v. West Milford Tp. in Passaic County, 9 N.J. 295 (1952), wherein the disputed tax assessment, levied pursuant to R.S. 54:4-3.3, involved 18,548 acres in West Milford. The court noted: "On part of the property a reservoir is located but the rest of the property can be classified as watershed property and part of the Newark water supply system." (At p. 300 emphasis added.) Thus, no sharp distinction was made between lands used for the purpose of a public water supply and lands used for the purpose of a public water supply system.

II
The Water Commission's second point is that the lands were not valued accordingly to their actual use for water distribution purposes.
*152 R.S. 54:4-3.3 provides that publicly held lands used for the purpose and for the protection of a public water supply shall be subject to taxation, without regard to any building or improvements thereon "in the same manner and to the same extent as the lands of private persons."
Lot No. 10 is located in a residential A-1 zone. The other three plots are in an office and research zone. The subject lands do not involve thousands of acres, as in City of Newark v. West Milford Tp. in Passaic County, supra, where there were 18,548 acres; or as in In re Appeal of East Orange, 80 N.J. Super. 219 (App. Div. 1963), certification denied 41 N.J. 200 (1963), wherein the Township of Livingston taxed 1,471 acres of watershed land in its municipality owned by East Orange. As noted above, the lands in issue in Clifton consist of 7.56 acres, constituting Lot 10, and 1.9 acres comprising the other three parcels. Thus, we are not confronted with the problems inherent in the sale of very large tracts of land, as was the situation in the City of Newark and East Orange cases.
In the latter, Livingston argued that the value of East Orange's water reserve lands should include the factor of the aquifer, the valuable underground water deposits. Its theory was that all land must be valued for taxation in the condition in which it is held by the owner. It argued that computing the value of the land for residential development, as opposed to its greater value as a source of potable water, was unrealistic. We held that the general rule, that land must be taxed "in the actual condition in which the owner holds it," was not without qualification. 80 N.J. Super., at p. 230. Of importance is "what can be done with the property." Id., at p. 231. See, too, D.L. & W.R.R. Co. v. City of Hoboken, 16 N.J. Super. 543, 570 (App. Div. 1951), reversed on other grounds, 10 N.J. 418 (1952).
In Division of Tax Appeals v. Ewing Tp., 72 N.J. Super. 238, 243 (App. Div. 1962), the subject property had been held and used as a farm. We held that its use as a farm would *153 not preclude the tax assessor from considering "the possibility of sale to a buyer who intends a different use, unless such possibility is so remote as to have no real bearing upon current value." Thereafter, the law was changed as to lands actually devoted to farm purposes. See N.J.S.A. 54:4-23 et seq., the Farmland Assessment Act of 1964.
So long as R.S. 54:4-3.3 requires water supply lands to be valued for tax purposes "in the same manner and to the same extent as the lands of private owners," the proper rule was stated by us in In re Appeal of East Orange to be:
"It is the fitness and availability of property for particular uses which should be given consideration in arriving at its taxable value, rather than the fact of actual use as such." 80 N.J. Super., at p. 231.
City of Newark v. West Milford Tp. in Passaic County, supra, 9 N.J., at p. 308, is in accord therewith. There, the Supreme Court said:
"The true value of these watershed lands can only be reasonably approximated and will have to be determined by comparison of the representative component parts of the various classifications of the lands * * * with the true value of comparable parcels of land owned by private persons adjacent to the watershed or reasonably nearby in the township, measured by the standard of value established by a fair and bona fide sale at private contract."
There was in this case substantial evidence of comparable sales sufficient to support the values fixed by the State Division. The taxpayer neither introduced into evidence nor attempted to introduce into evidence any true value of the property. We find no basis for disturbing the presumed correctness of the actions of this administrative agency. The under-assessment of the property in past years does not estop the taxing authorities from making a proper assessment for the year in question. We are told that there was a general revaluation of taxable property in Clifton for 1964, not merely that of appellant.
*154 We can appreciate the Water Division's position. But the remedy belongs more properly with the Legislature, whose own enactments mandate this judicial determination.
The judgments under review are affirmed.