EVERS, J. T. C.
These 1978-1979 local property tax complaints by the taxpayer involve the valuation of four contiguous tax lots (two line items) located on Columbia Terrace, which are improved with a 21 unit, four story walk-up apartment building, which was constructed in 1927. The site measures 102 feet X 88 feet, contains 9,030 square feet, and is serviced by all public utilities. The building has no basement and has a basic construction of solid brick walls and a flat built-up roof. The immediate neighborhood is comprised of a mixture of residential dwellings, some commercial establishments and old and new multi-family structures. Taxpayer alleges discrimination in assessments in both years. The history of the assessments and County Board action follows:
Block 50, Lots 17 & 18
Assessment County Board
Land $20,700 $20,700
Improvement 4,000 1,000
$24,700 $21,700 Total
Block 50, Lots 19 & 20
Assessment County Board
Land $ 20,700 $ 20,700
Improvement 198,600 154,700
Total $219,300 $175,400
Basic to the taxpayer’s complaint is the task of overcoming the presumption of correctness which attaches to the judgment of the County Board of Taxation. Having accomplished that *200 objective, however, it is still the task of the appellant to sustain its burden of proving, not only that the judgment below was in error, but, through a fair preponderance of the evidence, the market value of the premises in question. Such evidence must be definite, positive and certain in quality and quantity. Aetna Life Insurance Co. v. City of Newark, 10 N.J. 99, 89 A.2d 385 (1952). While I do not agree with all of taxpayer’s conclusions, I do find that it fully satisfied the aforementioned tests.
With respect to the value of the land it is noted that taxpayer contended that the assessment of' $41,400 represents its true value. While it was suggested by the borough that the land assessment was low for the period under review, no testimony was supported in substantiation thereof. Under the circumstances I accept the taxpayer’s contentions and find the land value to be $41,400 as reflected in the judgment of the County Board. The presumption of correctness which attaches to that judgment controls. Aetna Life Insurance Co. v. City of Newark, supra.
This being an income producing property, the taxpayer relied primarily on the income approach in estimating its value. There is no one doctrinaire approach to the valuation of property. Samuel Hird & Sons, Inc. v. Garfield, 87 N.J.Super. 65, 208 A.2d 153 (App.Div.1965). The search is for the true value of the property; that price which a hypothetical buyer would pay a hypothetical willing seller. N.J.S.A. 54:4-23 and New Brunswick v. Division of Tax Appeals, 39 N.J. 537, 189 A.2d 702 (1963). In a given situation the income approach may predominate. It is obvious that where, as here, we are dealing with a 50 year old income producing property, the income approach to valuation is the most reliable. However, the market data approach which generally carries less weight in such situations and particularly in a rent controlled community such as Edgewater where the rents are frozen at various levels for all apartments, is quite significant here in view of the July 1978 sale of the subject property.
*201 The material portion of the borough’s testimony consisted of a reference to sales of five alleged comparable properties. However, its attempts to establish similarity between the alleged comparable sales properties and the subject — that being a necessary ingredient to the market approach technique — were found to be considerably lacking. See Newark v. West Milford, 9 N.J. 295, 88 A.2d 211 (1953) and Venino v. Carlstadt, 1 N.J.Tax 172 (1980). Additionally I note that the five sales relied on by the borough suggest a per unit value of the subject of $12,500-$13,-500 but for reasons unexplained, except for the fact that in the opinion of the assessor the subject was entitled to some kind of a benefit, the premises were valued by the borough at $9,300 per unit.
The subject parcel was sold in July 1978 for $170,000 or $8,100 per unit. Because of the favorable terms of this transaction, the borough claimed that the sale could not be used as a basis to establish value. On cross-examination, however, the assessor admitted that no objection was raised to the inclusion of the sale in the ratio (of assessments to sales prices) computations of the Director of the Division of Taxation. Its inclusion, according to the assessor, was welcomed because it enhanced the borough’s ratio. Yet the borough insisted that it was no useable for market study purposes. Obviously, the taxing district cannot have it both ways.
I give no weight to the valuation testimony of borough’s witness. The determination of the weight to be given to the testimony of an expert witness is for the trier of fact and that weight depends not only on the candor, intelligence, knowledge and experience of the witness but on the facts and reasoning which form the foundation of the expert’s opinion. In re Port of New York Authority, 28 N.J.Super. 575, 101 A.2d 365 (App. Div.1953); Passaic v. Gera Mills, 55 N.J.Super. 73, 150 A.2d 67 (App.Div.1959), certif. denied 30 N.J. 153, 152 A.2d 171 (1959). The court’s rejection of the opinion of the borough’s expert, however, does not lessen the taxpayer’s burden as previously noted.
*202 While the selling price of real property is a guiding “indicium” of fair market value and ordinarily is merely evidential, such price under certain circumstances might become controlling. Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 162, 65 A.2d 828 (1949). The statutory criterion is the consideration of the market value at a fair and bona fide sale by private contract. N.J.S.A. 54:4-23. I find that the price for which the subject premises were sold in July 1978 is not indicative of the property’s true value. In reaching this conclusion, I have weighed and evaluated the factors surrounding the sale and find special circumstances which tend to increase the sales price in derogation of the property’s true value. See Rek Investment Co. v. Newark, 80 N.J.Super. 552, 559, 194 A.2d 368 (App.Div.1963); McCrory Stores Corp. v. Asbury Park, 89 N.J. Super. 234, 245, 214 A.2d 526 (App.Div.1965). As previously noted, the subject property was sold at a total price of $170,000 comprised of $16,500 in cash and a purchase money mortgage taken back by the seller in the amount of $153,500 at a very favorable 7.5% interest rate for 20 years. Amortization of the mortgage did not begin until three years after the date of sale with interest only at 7.5% payable for that period. Obviously the favorable terms surrounding this transaction resulted in a premium being paid for the property. Under these circumstances, the sale can be accorded but little weight.
In his income approach taxpayer’s expert found the 1978 lease rents, although higher than those in effect as of the 1977 assessing date, to reflect economic income. In recognition of the impact of rent control in the community no comparable lease rents were offered. Although the borough suggested that the ordinance may permit higher rents upon a successful application by the taxpayer no evidence in support of that argument was adduced. I find no reason to reject the use of the 1978 rents in the amount of $34,800 in the capitalization of income process. By deducting therefrom a 2% vacancy allowance as advanced by the taxpayer, and which I find to be reasonable in view of the low vacancy experience of the structure, and adding thereto $864 for garage rent, the effective gross income is $34,968.
*203 Taxpayer’s expenses, which were stabilized at $16,071, ($3,800 lower than the actual average expenses for 1978 and 1979), amounted to 46% of the effective gross income. While this ratio may appear to be high I accept the expenses as being realistic for several reasons. I first note that $7,070, or 20% of the expenses, represented fuel oil expense — a not extravagant sum for the period in question. Secondly, it is recognized that greater than normal expenses can be anticipated in connection with the operation and maintenance of a 50 year old structure. Lastly, but for the rent controlled ceiling, the 46% ratio may very well have been somewhat less. By deducting these expenses from the effective net income, the sum of $18,897 is available for purposes of capitalization.
Taxpayer’s expert capitalized this income into value by using an overall capitalization rate plus a tax factor based on the application of the average ratios found by the Director of the Division of Taxation to exist in Edgewater during 1978 and 1979 pursuant to N.J.S.A. 54:1 3.5b to the actual tax rates. The actual tax rates were 2.73 and 3.11 and the ratios were 80% and 81% resulting in effective tax rates of 2.184 and 2.519 for 1978 and 1979 respectively.
Taxpayer’s overall capitalization rate was developed by utilizing a mortgage equity band of investment concept based on economic financing conditions for the time period in question. Based on average interest rates charged by life insurance companies, the expert, for a 20 year term and a 67% loan, found an average interest rate of 9.5% with a constant rate of 11.19%. On the 33% equity investment, he assumed a 10% dividend which indicated an overall rate of 10.8%.
While the mortgage equity technique may be a sophisticated method of capitalization, its effectiveness depends on the accuracy of the estimated holding period, the equity yield rate selected and the financing assumed to be available. It further depends on the accuracy of the basic interest rate information, the extent of the sample and the geo-economic area from which the information is drawn. Here I note that the source informa *204 tion was obtained from 15-20 life insurance companies located and doing business through the entire United States. A more preferable and reliable source would have drawn from loans made in the New York — New Jersey metropolitan area. Additionally I find no support in the record for the use of a 67%-33% mortgage — equity ratio or of a 10% return on the investment. Neither is there any justification for the expert’s assumption that a 20 year loan would be made in 1977 on a building constructed in 1927. While it is often stated that this technique is probably a reliable method of estimating value, there is absolutely nothing in the record that demonstrates that investors do, in fact, use this method to determine value. The Supreme Court of New Jersey has indicated that
“... it is not for the trier of fact to decide abstractly what return an investor should want; the inquiry relates to what investors in property of this kind in fact do demand and do obtain in deals with willing sellers.” New Brunswick v. Division of Tax Appeals, supra, 39 N.J. at 551, 189 A.2d 702.
It may well be that the mortgage equity technique under certain circumstances is a very acceptable method of arriving at a capitalization rate. However, because persuasive proofs as to what investors do demand and the manner in which such demands can be calculated are lacking here, I find that the traditional straight capitalization with straight line recapture is a more reliable method of estimating value. Accordingly, as is my right and duty, I will apply my own judgment in ascertaining true value. Samuel Hird & Sons, Inc. v. Garfield, supra; Middlesex Builders v. Tp. of Old Bridge, 1 N.J.Tax 305, 315 (1980).
Considering the economic and geographical location of the property and based on a review of the rates of return available on alternative investments during the period in question, I find a 9.25% return on the investment to be fair and reasonable. To this will be added a recapture rate of 2.5% which assumes a remaining 40 year economic life and a tax factor for each year as previously computed. The capitalization rates, therefore, for 1978 and 1979 are 13.934 and 14.269 respectively. Based on these rates, a computation of the capitalization of income process follows.
*205 1978
Gross income $ 34,800
Less 2% vacancy allowance 696
$ 34,104
Add garage income 864
Effective gross income $ 34,968
Less expenses 16,071
Net income before taxes & recapture $ 18,897
Less income to land ($41,400 X 11.434) 4,734
Income to improvements $ 14,163
$14,163 capitalized at 13.934 $101,644
Add land value 41,400
Total value $143,044
1979
Net income before taxes & recapture $ 18,897
Less income to land ($41,400 X 11.769) 4,872
Income to improvements $ 14,025
$14,025 capitalized at 14.269 $ 98,290
Add land value 41,400
Total value $139,690
Based on the foregoing values, I find discrimination relief from the assessments is appropriate. N.J.S.A. 54:2-40.4 provides in pertinent part:
“Whenever the (Tax Court) is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall revise the taxable value of the property by applying the average ratio to the true value of the property ...”
The “common level range” as defined in N.J.S.A. 54:1-35a, is “that range which is plus or minus 15% of the average ratio for that district”. N.J.S.A. 54:1-35b directs the Director to determine the average ratio and the common level range and to certify the same to the County Board, the assessor and the municipal clerks. The average ratios so certified by the Director *206 for Edgewater was 80% for 1978 and 81% for 1979. The common level range in 1978 was 68%-92% and was 68.85%-93.15% in 1979.
As the subject property was assessed at over 170% of its true value, which I have found to be $143,044 in 1978 and $139,690 in 1979,1 find that the assessment exceeds the common level range and accordingly the assessments will be reduced to the property’s true value multiplied by the appropriate average ratio pursuant to N.J.S.A. 54:2-40.4. The Clerk of the Tax Court is directed to enter judgment as follows:
Block 50, Lots 17 & 18
1978 1979
$16,560 $16,767 Land
1,610 1,576 Improvement
$18,170 $18,343 Total
Block 50, Lots 19 & 20
1978 1979
$16,560 $16,767 Land
79,705 78,039 Improvement
$96,265 $94,806 Total