**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1404-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JULIUS N. BING, a/k/a
JULIUS NISH BING,

     Defendant-Appellant.

_____

Submitted February 5, 2019 – Decided March 6, 2019

Before Judges Hoffman and Firko.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 16-01-0042.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (John J. Santoliquido, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Julius N. Bing appeals his judgment of conviction following a jury trial. He also challenges the denial of his motion to suppress. We affirm.

I.

We derive the following facts from the trial court's factual findings at the suppression hearing, the hearing testimony of Officer Matthew Laielli of the Pleasantville police department, and the trial record.

While on patrol at 11:45 p.m. on October 11, 2015, Officer Laielli observed a silver Mustang, operated by Latanya Watson, traveling in the wrong direction on a one-way street. After initiating a lawful stop, Officer Laielli observed defendant, the front-seat passenger, engaging in suspicious behavior: reaching forwards, backwards, and towards the center console. After approaching the Mustang on the passenger side, the officer observed that Watson was visibly intoxicated. He asked defendant for his identification and the driver for her credentials. When the officer inquired of defendant as to his furtive movements, he denied same. Officer Laielli then shone his flashlight into the vehicle and noticed that components of the dashboard were missing, and an object, which he initially perceived to be a socket wrench, was protruding from a cavity in the dashboard.

A-1404-17T4

Police dispatch performed a check for open warrants and determined that defendant had an active traffic warrant for $300. Officer Laielli asked defendant to step out of the vehicle to discuss the warrant. Having a clearer view of the object protruding from the dashboard cavity, the officer believed it was a shotgun barrel with a gun sight or a flare gun. After removing it, the officer determined it was a .22 caliber handgun with several live rounds of ammunition. While the officer was calling for backup, defendant fled the scene, and was later apprehended. Officer Laielli retrieved defendant's hat and bullet proof vest that he was wearing before fleeing.

Defendant was charged with unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1) (count one); and resisting arrest by flight, N.J.S.A. 2C:29:2(a)(2) (count two).

In moving to suppress the evidence, defendant argued that its seizure was unconstitutional because Officer Laielli lacked probable cause to believe the object in the dashboard cavity was a handgun. The State maintained that the warrantless search was proper because Officer Laielli's observation of the interior of a vehicle was not a search and was proper here under the plain view exception. The State further contended that Officer Laielli's use of a flashlight to observe the vehicle's interior was not a search either because the

circumstances here were unforeseeable and spontaneous. At the hearing, Officer Laielli testified that defendant was "reaching all over towards the center, leaning forward, leaning back and moving around, not common." As to his use of a flashlight, Officer Laielli testified, "[i]t did absolutely appear like the end or - - barrel tip of a firearm, or possibly maybe a flare gun or something along those lines, but it did look like some type of . . . weapon[.]"

After considering Officer Laielli's testimony, the judge found him credible and consistent with the video recording from his vehicle. There is no question that defendant was lawfully stopped because of Watson's traffic violation, and the judge found, "Officer Laielli had no reason to believe that he would come across a firearm when he pulled the suspected vehicle over." The judge determined, "these circumstances, coupled with the [o]fficer's training and experience as a law enforcement officer, provided [him] with a . . . well-grounded suspicion that the object could have been an unlawful firearm." The judge sustained the validity of the warrantless search and denied defendant's motion to suppress.

At trial, the judge instructed the jurors on flight. Defendant argued that he fled the scene because of the traffic warrant and the judge advised the jury to consider defendant's explanation. The jury found defendant guilty on both

4

counts, and he was sentenced to an aggregate prison term of five-years with a three-and-a-half-year term of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6(c).

On appeal, defendant argues:

POINT I

THE COURT ERRED IN DENYING THE SUPPRESSION MOTION BECAUSE OFFICER LAIELLI PHYSCIALLY INTRUDED INTO A VEHICLE IN ORDER TO INVESTIGATE THE NATURE OF AN OBJECT HE HAD SEEN WHILE OUTSIDE THE VEHICLE, AND HE LACKED PROBABLE CAUSE AT THE TIME OF ENTRY TO CONCLUDE THAT THE OBJECT WAS A WEAPON.

POINT II

THE TRIAL COURT COMMITTTED REVERSIBLE ERROR BY ISSUING AN UNCONSTITUTIONAL INSTRUCTION ON FLIGHT AS CONSCIOUSNESS OF GUILT. (Not Raised Below).

POINT III

THE STATE FAILED TO PROVE THAT THE FIREARM, DESCRIBED AS "REVOLUTIONARY-WAR" ERA, WAS CAPABLE OF OPERATION BY A SINGLE HAND AS REQUIRED BY N.J.S.A. 2C:39-5(b) AND 2C:39-1(k). (Not Raised Below).

II.

"An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)).  We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  We owe no deference, however, to conclusions of law made by trial courts in suppression decisions, which we review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution require that police officers obtain a warrant before conducting a search, unless that search falls into a recognized exception to the warrant requirement. State v. Deluca, 168 N.J. 626, 631 (2001). Accordingly, a warrantless search is presumptively unreasonable and invalid. Payton v. New York, 445 U.S. 573, 586 (1980); State v. Pineiro, 181 N.J. 13, 19 (2004).  The burden rests with the State by a preponderance of the evidence to prove that the search "falls within one of the few well-delineated exceptions to

the warrant requirement." Pineiro, 181 N.J. at 19 (quoting State v. Maryland, 167 N.J. 471, 482 (2001)).

One exception to the warrant requirement is the plain view exception. Under the plain view exception, three requirements must be satisfied: (1) the police officer must be lawfully in the viewing area; (2) the evidence must be discovered inadvertently, meaning that the officer did not know in advance where evidence was located nor intend beforehand to seize it; and (3) it has to be immediately apparent to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure. State v. Mann, 203 N.J. 328, 341 (2010) (citing State v. Bruzzese, 94 N.J. 210, 236 (1983)) (quotation marks omitted). With respect to the third requirement, "in order to seize evidence in plain view[,] a police officer must have probable cause to associate the [item] with criminal activity." Ibid. (quoting Bruzzese, 94 N.J. at 237).

The judge concluded that Officer Laielli had probable cause to seize the handgun pursuant to the plain-view exception to the warrant requirement because his reason for stopping the Mustang was unconnected with his probable cause to seize the firearm, which he thought was "the barrel of a shotgun or a flare gun." The judge noted that:

> Officer Laielli did not obtain probable cause by searching the vehicle first and uncovering the gun later

as [d]efendant maintains. Although Officer Laielli testified that he initially observed what he believed to be a socket protruding from the open dash compartment when he first approached the co-[d]efendant's vehicle, Officer Laielli, after ordering [d]efendant out of the vehicle, returned to the side of the car and indicated that he was able to get a better look at the dash with [d]efendant removed from the passenger seat . . . observ[ing] what appeared to him to be the barrel of a shotgun or a flare gun wedged into the dash.

Defendant argues that Officer Laielli was not lawfully in the viewing area when he conducted his search and seizure, and committed trespass when he placed his entire upper body into the Mustang. In support of his argument, defendant cites to Horton v. California, 496 U.S. 128, 136 (1990), which held that "[i]t is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Defendant contends that Officer Laielli did not meet prongs one and three of the plain-view requirements before removing the handgun from the Mustang.

Our review of the record leads us to affirm the judge's ruling that the warrantless search of the Mustang was proper based on the plain-view doctrine. The stop was lawful; Officer Laielli rightfully stood alongside the Mustang; and he had every right to peer into the vehicle when defendant could not produce his identification. "[T]he use of a flashlight does not transform an otherwise

reasonable observation into an unreasonable search within the meaning of the Fourth Amendment or under the New Jersey Constitution."  State v. Johnson, 171 N.J. 192, 210 (2002) (alteration in original) (quoting State v. Gibson, 318 N.J. Super. 1, 11 (App. Div. 1999)).  Once defendant exited the vehicle, Officer Laielli's credible testimony convinced the judge he had probable cause to seize the handgun.

Based upon our careful review of the record, we conclude that the judge was correct in denying defendant's motion to suppress.

### III.

We now address Point II of defendant's brief, not raised in the trial court, that the judge erred by charging flight to the jury as evidence of consciousness of defendant's guilt.  Defendant further argues the flight instruction, using the model jury charge, was unconstitutional because it "required [defendant] to establish that he did not engage in flight as proof of consciousness of guilt," "diluted the State's burden of proof," and "constituted impermissible burden shifting."  We disagree.

Although an appellate court may consider allegations of error not raised in the trial court, it will not do so unless the issue concerns a matter of substantial public interest.  State v. Robinson, 200 N.J. 1, 20 (2009); State v. Arthur, 184

N.J. 307, 327 (2005). Situations where the specified issue was never raised on appeal are governed by the plain error rule. See R. 2:10-2. If the error has not been brought to the trial court's attention, the appellate court will not reverse on the ground of such error unless the plain error is shown, as is "clearly capable of producing an unjust result." Ibid.

Instructions on flight "may be evidential of consciousness of guilt, provided the flight pertains to the crime charged." State v. Randolph, 228 N.J. 566, 594 (2017). For example, the evidence should establish that the defendant's motive for leaving the scene was to avoid apprehension. State v. Wilson, 57 N.J. 39, 49 (1970). No objection was made during the trial, therefore, the jury instruction is presumed to be correct. State v. Montalvo, 229 N.J. 300, 320 (2017).

We reject defendant's arguments. No burden shifting took place here. The charge involved was a model jury instruction, and instructed jurors to consider defendant's explanation for fleeing the scene. Ibid.

The jury charge on flight in pertinent part provided as follows:

> There has been testimony in this case from which you may infer that the defendant fled shortly after the alleged commission of the crime. And that would be the defendant Bing.

A-1404-17T4

The defense has suggested the following explanation. That the defendant fled because he feared being arrested on an unrelated outstanding warrant. If you find that the defendant's explanation is credible, you should not draw any inference of the defendant's consciousness of guilt of the charge involved in the indictment from the defendant's departure.

If after a consideration of all the evidence, you find defendant fearing that an accusation or arrest would be made against him on the charge involved in the indictment, took refuge in flight for the purpose of evading the accusation or arrest, then you may consider such flight in connection with all of the other evidence in the case as an indication or proof of a consciousness of guilt.

It is for you, as judges of the facts, to decide whether or not evidence of flight shows a consciousness of guilt and the weight to be given such evidence in light of the other evidence in the case.

Count II of the indictment does charge the defendant Julius Bing with committing the crime of resisting arrest by flight. The statute on which this charge is based reads as follows[:]

> A person is guilty if he, by flight, purposely prevents or attempts to prevent a law enforcement officer from affecting an arrest. In order to convict the defendant of this charge, the State must prove beyond a reasonable doubt that the defendant committed the basic offense of resisting arrest . . . .

11

A-1404-17T4

We conclude it was not plain error for the judge to use the model jury instruction on flight. "When a jury instruction follows the model jury charge, although not determinative, 'it is a persuasive argument in favor of the charge as delivered.'" State v. Whitaker, 402 N.J. Super. 495, 513-14 (App. Div. 2008) (quoting State v. Angoy, 327 N.J. Super. 78, 84 (App. Div. 2000)).

Defendant next argues that the charge failed to include that the State must prove, by a preponderance of the evidence, that any flight was to avoid accusation or arrest on the charges, and that the charge on flight as consciousness of guilt, conflicted with the charge on obstruction by flight, which required the State to prove beyond a reasonable doubt that he fled for the purpose of evading arrest.

The alleged deficiencies regarding the jury charge are belied by the fact that the model jury charge was given and allowed the jury to consider defendant's testimony for fleeing the scene. "The process by which model jury charges are adopted in this State is comprehensive and thorough" and "are reviewed and refined by experienced jurists and lawyers." State v. R.B., 183 N.J. 308, 325 (2005). The jury's verdict was based upon the evidence in the record and their assessment of defendant's credibility. We conclude there was no error with the jury charge.

A-1404-17T4

IV.

Turning to Point III of defendant's brief, not raised in the trial court, defendant asserts that the State failed to prove that the handgun, described as "revolutionary-war" era, was capable of single hand operation as defined in N.J.S.A. 2C:39-5(b) and 2C:39-1(k). The statute defines a handgun as "any pistol, revolver or other firearm originally designed or manufactured to be fired by the use of a single hand." N.J.S.A. 2C:39-1(k). Defendant argues that because Randolph Toth, the New Jersey State Police ballistics expert, testified for the State that the handgun had "a very unusual design" and identified it as a ".22 long rifle caliber FMJ, six-barreled pistol" having the "capacity to discharge six .22 long rifle caliber cartridges," but did not testify that the handgun could be fired by a single hand, defendant argues the State failed to meet its burden. We disagree. The subject handgun requires a cylinder to be manually moved and lined up before firing. These features contradict defendant's argument that this weapon is not a handgun.

A firearm is defined "not in terms of operability, but in terms of what the weapon was designed to do." State v. Gantt, 101 N.J. 573, 583 (1986). Since the State established through its expert that despite its unusual design, this

13

weapon was designed as a handgun, regardless of its operability, defendant's argument is rejected.

Defendant's other arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14